**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EDUARDO LUCERO,
    Plaintiff,

v.      No.: 1:14-cv-393-KG-KK

ALBERT OLIVAS, DAVID PENA,
DWANE PENA, SILVERIO PENA,
MICHAEL GILBERT, EDDIE ARAGON, JR.,
GILBERT MARTINEZ, MATHEW STEPHENSON,
JOHN DOE, JANE DOE, JOHN P. SWEENEY and
YOLANDA BERUMEN-DEINES each in their individual capacities,
and the NEW MEXICO CHILDREN, YOUTH, AND FAMILIES DEPARTMENT,
    Defendants.

*Consolidated with:*

ISAAC RAMIREZ,
    Plaintiff,

v.      No.: 1:14-cv-394-KG-KK

OLIVAS, et al.,
    Defendants.

*Consolidated with:*

JACOB GONZALES,
    Plaintiff,

v.      No.: 1:14-cv-395-KG-KK

OLIVAS, et al.,
    Defendants.

*Consolidated with:*

DANTE WOODS,
    Plaintiff,

v.      No.: 1:14-cv-396-KG-KK

OLIVAS, et al.,
    Defendants.

### DEFENDANT EDDIE ARAGON JR.'S MOTION FOR JUDGMENT
### ON THE PLEADINGS AND FOR STAY OF DISCOVERY

COMES NOW, Defendant Eddie Aragon, Jr. ("Mr. Aragon"), by and through his counsel of record, Richard J. Shane, Esq. and Rachel M. Reinsvold, Esq. of Riley, Shane & Keller, P.A., and hereby moves this Court, pursuant to Fed. R. Civ. P. Rule 12(c), for its Order dismissing with prejudice all of Plaintiffs' state law claims against Mr. Aragon on the basis of qualified immunity under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1, et seq., dismissing Plaintiffs' federal law claims against him, pursuant to 42 U.S.C. § 1983, and all claims asserted by Plaintiffs Eduardo Lucero and Isaac Ramirez for failure to state a claim upon which relief can be granted, and entering a stay of discovery pending resolution of this Motion.

### INTRODUCTION[1]

Plaintiffs' lawsuits relate to alleged mistreatment occurring during their respective incarcerations at Defendant New Mexico Children, Youth and Families Department's Youth Diagnostic and Development Center ("YDDC"), in Albuquerque, New Mexico, in early 2012.[2] Plaintiffs' Complaints each assert claims against Defendants, generally, under 42 U.S.C. Section 1983, for alleged cruel and unusual punishment in violation of the 8th Amendment.[3] Plaintiffs' Complaints also allege state law tort claims for assault, battery, false imprisonment, and negligence per se, pursuant to the New Mexico Tort Claims Act ("TCA"), NMSA 1978, § 41-4-1

---

[1] Defendant's recitation herein of Plaintiffs' factual allegations does not constitute an admission that said facts are true. Defendant recognizes that, for the purposes of this Motion, the Court must accept Plaintiffs' factual allegations as true. However, Defendant expressly preserves his right to continue to dispute said factual allegations and does not waive any denial set forth in his Answers to Plaintiffs' respective Complaints filed herein.

[2] *See Lucero v. Olivas, et al.,* No 1:14-cv-00393-KG-CG, Doc. 1, Ex. A (hereinafter "Lucero Complaint"); *Ramirez v. Olivas, et al.,* No. 1:14-cv-00394-GBW-CG, Doc. 1, Ex. A (hereinafter "Ramirez Complaint"); *Gonzales v. Olivas, et al.,* No. 1:14-cv-00395-SCY-WPL, Doc. 1, Ex. A (hereinafter "Gonzales Complaint"); *Woods v. Olivas, et al.,* No. 1:14-cv-00396-KG-KBM, Doc. 1, Ex. A (hereinafter "Woods Complaint").

[3] *See* Lucero Complaint, ¶¶ 46-56; Ramirez Complaint, ¶¶ 46-56; Gonzales Complaint, ¶¶ 46-56; Woods Complaint, ¶¶ 42-52.

*et seq.*[4]  In addition, with the exception of Plaintiff Dante Woods, Plaintiffs each allege denial of their right to procedural due process, under 42 U.S.C. Section 1983.[5] By Order of the Honorable Kenneth Gonzales, United States District Court Judge, the aforesaid four cases were consolidated for all purposes.[6]

It is important to note that the ***vast majority*** of Plaintiffs' allegations are not asserted against any particular Defendant.  In fact, there are very few allegations in Plaintiffs' Complaints that address individual Defendants' alleged acts and/or omissions.  With regard to Mr. Aragon, there are some allegations that specifically address his conduct in Plaintiff Jacob Gonzales' and Plaintiff Dante Woods' respective Complaints.[7] However, Plaintiff Eduardo Lucero and Plaintiff Isaac Ramirez's respective Complaints are ***completely devoid*** of any specific allegations pertaining to Mr. Aragon.[8] Instead, Plaintiffs' Complaints assert general allegations against two categories of Defendants: 1) the Defendants employed by YDDC as Youth Care Specialists (collectively referenced to herein as "YCS Defendants"); and 2) the remaining Defendants with alleged "supervisory liability" for the conduct of YCS Defendants.[9]

Common to each of Plaintiffs' Complaints are general allegations asserted against all YCS Defendants.[10] Plaintiffs allege they were mistreated because they were from Las Cruces, New Mexico.[11] They also contend that YCS Defendants, collectively, allowed the residents from Albuquerque to mistreat Plaintiffs and also gave the Albuquerque residents preferential

---

[4]*See* Lucero Complaint, ¶¶ 75-81; Ramirez Complaint, ¶¶ 75-81; Gonzales Complaint, ¶¶ 75-81; Woods Complaint, ¶¶ 66-72.
[5]*See* Lucero Complaint, ¶¶ 57-61; Ramirez Complaint, ¶¶ 57-61; Gonzales Complaint, ¶¶ 57-61.
[6] See Order entered herein on January 14, 2015; Document 36.
[7]*See* Gonzales Complaint, ¶¶ 27-28; Woods Complaint, ¶¶ 29-35.
[8]*See generally* Lucero Complaint; Ramirez Complaint.
[9]*See generally* Lucero Complaint; Ramirez Complaint; Gonzales Complaint; Woods Complaint.
[10]*See id.*
[11]*See* Lucero Complaint, ¶¶ 30-41; Ramirez Complaint, ¶¶ 30-41; Gonzales Complaint, ¶¶ 30-41; Woods Complaint, ¶¶ 28, 36-37.

treatment.[12] Plaintiffs each allege that, throughout their incarceration at YDDC: 1) they were regularly denied adequate or sufficient amounts of food by YCS Defendants and other employees of CYFD, causing weight loss;[13] 2) the YCS Defendants knew that Plaintiffs were not receiving food on a regular basis and allowed Plaintiffs' food to be taken and eaten by residents from Albuquerque, and referred to the practice as "paying rent";[14] and 3) the YCS Defendants routinely denied Plaintiffs access to the restroom for hours while allowing Albuquerque residents to use the restroom freely throughout the day, forcing Plaintiffs to urinate in their drinking cups.[15] In addition, all Plaintiffs, except Plaintiff Dante Woods, allege that the YCS Defendants allowed the Albuquerque residents to unlawfully take their stamps and mail.[16] The same three Plaintiffs further allege, "upon information and belief", that YCS Defendants carried out several instances of simulated anal sex and/or sexual misconduct with completely nude Las Cruces residents.[17] Significantly, all of the aforesaid allegations have been asserted against YCS Defendants collectively.

## POINTS AND AUTHORITIES

### I.   Standard of Review.

A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the pleadings are closed. Fed.R. Civ. P. 12(c). A motion pursuant to Rule 12(c) is generally treated the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Ramirez v. Wal-Mart Stores, Inc.,* 192 F.R.D. 303, 304 (D.N.M. 2000). Accordingly, "[t]he same standards that govern a motion to dismiss under [R]ule 12(b)(6) also govern a motion for judgment on the

---

[12] *See id.*
[13] *See* Lucero Complaint, ¶ 25; Ramirez Complaint, ¶25; Gonzales Complaint, ¶25; Woods Complaint, ¶27.
[14] *See* Lucero Complaint, ¶ 26; Ramirez Complaint, ¶26; Gonzales Complaint, ¶26; Woods Complaint, ¶28.
[15] *See* Lucero Complaint, ¶¶ 39-40; Ramirez Complaint, ¶¶ 39-40; Gonzales Complaint, ¶¶ 39-40; Woods Complaint, ¶¶ 36-37.
[16] *See* Lucero Complaint, ¶ 41; Ramirez Complaint, ¶41; Gonzales Complaint, ¶41.
[17] *See* Lucero Complaint, ¶29; Ramirez Complaint, ¶29; Gonzales Complaint, ¶29.

pleadings under [R]ule 12(c)." *Mata v. Anderson,* 760 F. Supp. 2d 1068, 1083 (D.N.M. 2009) (citation omitted). When considering a motion pursuant to Rule 12(b)(6) or Rule 12(c), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See id.* (*citing Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006); *Hous. Auth. of Kaw Tribe v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991)). The sufficiency of a complaint is a question of law. *See id.* Thus, judgment on the pleadings is appropriate when, accepting all well-pleaded facts as true, the moving party is entitled to judgment as a matter of law. *McHenry v. Utah Valley Hospital,* 927 F.2d 1125, 1126 (10th Cir. 1991).

A plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Mata,* 760 F. Supp. 2d at 1083 (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007)). In other words, the complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Twobly,* 550 U.S. at 547. Only well-pleaded facts, as distinguished from conclusory allegations, are admitted. *Mata,* 760 F. Supp. 2d at 1084 (*citing Smith v. Plati,* 258 F.3d 1167, 1174 (10th Cir. 2001))."[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Belman,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Under the appropriate standard of review, even assuming all well-pleaded factual allegations in Plaintiffs' Complaints are true, Plaintiffs' claims against Mr. Aragon are legally and/or factually insufficient and should be dismissed. Specifically, Plaintiffs' state law claims for assault, battery, false imprisonment, and negligence per se are subject to dismissal on the basis of qualified immunity under the TCA. Although Plaintiffs' Complaints each contain conclusory allegations that YCS Defendants, including Mr. Aragon, were, at all times material to their

Complaints, law enforcement officers falling within the scope of waiver of immunity under Section 41-4-12 of the TCA, this position is not supported under controlling New Mexico authority. Therefore, sovereign immunity is not waived and all of Plaintiffs' state law tort claims against Mr. Aragon must be dismissed with prejudice. Even assuming, *arguendo*, that qualified immunity is waived under Section 41-4-12 of the TCA, such waiver does not extend to Plaintiffs' state law claims for negligence per se.

Furthermore, Plaintiffs' Complaints consist of vague, non-specific, and conclusory allegations with very little detail relating to the actual factual basis surrounding their claims, including, when and how the acts complained of occurred, which Defendants were involved, and the specific damages alleged.[18] Accordingly, Plaintiffs' federal law claims, under 42 U.S.C. Section 1983, are factually and/or legally insufficient as pled, and should be dismissed for failure to state a claim.

Moreover, Mr. Aragon is entitled to dismissal of all claims asserted against him by Plaintiff Eduardo Lucero and Plaintiff Isaac Ramirez, as their respective Complaints fail to state ***any*** specific allegations against Mr. Aragon ***whatsoever***.[19] Instead, these Plaintiffs simply include Mr. Aragon in each of their vague and undated general allegations made against all YCS Defendants.[20] Additionally, the only specific allegations pled in the Lucero and Ramirez Complaints are directed to other named Defendants and relate to events occurring on dates (ie. March 1, 2012 and March 2, 2012) when Mr. Aragon no longer worked for Defendant CYFD.[21]/ [22] In fact, Mr. Aragon was not employed by YDDC after February 20, 2012.[23] Therefore, Mr.

---

[18]*See generally* Lucero Complaint; Ramirez Complaint; Gonzales Complaint; Woods Complaint.
[19]*See generally* Lucero Complaint; Ramirez Complaint.
[20]*See id.*
[21]*See id.*
[22] Although Plaintiff Lucero's and Plaintiff Ramirez's Complaints do not specify the dates on which these events occurred, it is undisputed that they occurred on March 1, 2012 and March 2, 2012.
[23]*See* Termination Letter, attached hereto as Exhibit A.

Aragon was not employed by YDDC at the time of the alleged transgressions of March 1, 2012 and March 2, 2012 as set forth in the Lucero and Ramirez Complaints.  Accordingly, Plaintiff Lucero and Plaintiff Ramirez's respective Complaints filed herein, should be dismissed in their entirety as to Mr. Aragon.

Finally, for the reasons set forth herein, entry of a stay is appropriate pending the Court's decision on this Motion.

### II. Plaintiffs' State Law Tort Claims Against Mr. Aragon, for Assault, Battery, False Imprisonment, and Negligence Per Se, Are Subject to Qualified Immunity, Pursuant to the New Mexico Tort Claims Act; Therefore, Such Claims Must Be Dismissed With Prejudice.

Governmental entities and employees are immune from liability for any tort except as specifically waived by the New Mexico Tort Claims Act ("TCA"), NMSA 1978, §41-4-1 *et seq. See, e.g.*, NMSA 1978, § 41-4-4; *Cobos v. Dona Ana County Hous. Auth.,* 126 N.M. 418, 421, 970 P.2d 1143, 1146 (1998). In addition, the TCA provides the exclusive remedy for tort claims in which immunity has been waived. NMSA 1978, § 41-4-17. The only exception providing for the waiver of immunity for intentional torts is contained in Section 41-4-12. *See also Blea v. City of Espanola,* 117 N.M. 217, 870 P.2d 755 (Ct. App. 1994).

Section 41-4-12 waives sovereign immunity only with regard to "liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." Nevertheless, Section 41-4-12 does not apply to Plaintiffs' state law claims against Mr. Aragon for assault, battery, false imprisonment, and negligence per se. Although Plaintiffs' Complaints each contain conclusory

7

allegations that YCS Defendants were, at all times material to Plaintiffs' Complaints, law enforcement officers as defined by the TCA, this position is not supported under New Mexico law. On the contrary, Mr. Aragon, as a Youth Care Specialist, did not meet the definition of a "law enforcement officer" under the TCA. Therefore, sovereign immunity is not waived for Plaintiffs' state law tort claims. Accordingly, each of Plaintiffs' state law claims should be dismissed with prejudice on the grounds of qualified immunity.

>The TCA defines "law enforcement officer" as:
>
>a full-time salaried public employee of a governmental entity or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person *accused* of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

NMSA 1978, § 41-4-3(D). Thus, under the plain language of the statute, in order to qualify as a law enforcement officer, the individual's principal duties must include: (1) holding in custody any person accused of a criminal offense, (2) maintaining public order, and (3) making arrests for crimes. *Vigil v. Martinez*, 1992-NMCA-033, ¶ 16, 113 N.M. 714, 832 P.2d 405.

There is a considerable amount of case law that has construed the definition of a law enforcement officer under the TCA and it has been noted that "New Mexico courts have construed this definition strictly." *Lymon v. Aramark Corp.*, 728 F.Supp.2d 1222 (D.N.M. 2010). Additionally, New Mexico courts have addressed the applicability of the definition to both jail guards (holding pre-conviction) and prison guards (holding those already convicted) and have reached different conclusions regarding whether the guards are "law enforcement officers" based upon the plain language of the statute.

In *Methola v. County of Eddy*, 1980-NMSC-145, 95 N.M. 329, 622 P.2d 234, the New Mexico Supreme Court addressed the question of whether the "Eddy County Sheriff, his deputies and the jailers employed by the City of Albuquerque who performed services in or held in

custody those plaintiffs incarcerated in the Bernalillo County and Eddy County jails are 'law enforcement officers,' bringing them within the purview of Section 41–4-12." *Id.* ¶ 16. The Court concluded that the jail guards were "law enforcement officers" because their principal duties are to (1) maintain public order, and (2) hold accused persons in custody within the meaning of the definition. *Id.* ¶ 17. Importantly, the claims made by the respective plaintiffs in this case were based on incidents subsequent to an arrest but prior to a criminal conviction. *See id.*

In *Vigil v. Martinez*, the Court of Appeals also addressed whether a probation officer and her supervisor were "law enforcement officers" for purposes of the TCA. 1992-NMCA-033, 113 N.M. 714, 832 P.2d 405. The Court thoroughly examined the "duties of" the defendants and determined that they were not law enforcement officers within the meaning of the TCA, because the principal duties, defined as the duties in which the defendants devote a majority of their time did not fit the definition of "law enforcement officer." *Id.* First, a probation officer's principal duties do not include holding in custody any person accused of a criminal offense because probationers are not in custody and, more importantly for our purposes, a probationer has already been convicted and thus not "accused" of a criminal offense. *Id.* ¶ 17. Second, the Court held that the maintenance of public order is only incidental to the duties of probation and parole officers because the chief function of a probation officer is "rehabilitation." *Id.* ¶ 18. The Court construed the phrase "maintain public order" as it "has been traditionally interpreted in the law enforcement context. *Id.* ¶ 19. Third, the Court held that, although probation officers have authority to make arrests, making arrests for crime is not a principal duty. *Id.* ¶ 19.

Furthermore, in *Callaway v. N.M. Dep't of Corrections*, 1994-NMCA-049, 117 N.M. 637, 875 P.2d 393, the New Mexico Court of Appeals held that two "corrections officers" and two "recreation officers" at the State penitentiary were not "law enforcement officers" under the

9

TCA. *Id.* ¶¶ 9-12. The Court relied on an unpublished district court opinion in determining that the corrections and recreation officers were not "law enforcement officers." First, the Court reasoned that "the principal duties of prison guards are to hold in custody those who have already been convicted rather than merely accused of a criminal offense." *Id.* ¶ 11. Second, the Court reasoned that "maintenance of public order relates to a public not penitentiary setting." *Id.* Third, "although prison guards may have the supplemental power to arrest . . . their principal statutory duties" do not include making arrests for crimes. *Id.*

Recently, the United States District Court, District of New Mexico, in a published opinion from Judge Browing, relied on *Callaway* and held that a corrections officer and a captain at the Central New Mexico Correctional facility were not "law enforcement officers" under the TCA. *Lymon*, 728 F.Supp.2d 1222. The Court specifically noted that a different analysis applies to jail guards and prison guards due to the language in the definition that a law enforcement officer is someone with a principal duty to hold in custody any persons *accused* of a criminal offense. *Id.* at 1269. Thus, the Court held that jail guards are "law enforcement officers" within the meaning of the TCA, prison guards are not. *Id.*

Accordingly, *Callaway*, *Vigil*, and *Lymon* support the dismissal of Plaintiffs' state law tort claims under the TCA. YDDC is a not a jail holding youth offenders that have been accused of criminal offenses, but instead holds youth offenders who have already been adjudicated delinquent or convicted of criminal offenses. Therefore, at all times material to Plaintiffs' Complaints, Mr. Aragon was not a law enforcement official as defined under the TCA and is entitled to immunity from Plaintiffs' state law claims. Accordingly, all such claims should be dismissed with prejudice.

Furthermore, even if this Court were to determine that Mr. Aragon met the definition of a law enforcement officer under the TCA, the waiver of qualified immunity is limited to liability

for claims specifically enumerated under the Act. *See* NMSA 1978, § 41-4-4 through §41-4-12. The TCA does not provide for a waiver of qualified immunity with regard to claims for negligence per se. *See id.* As such, Plaintiffs' state law negligence per se claims would still be subject to dismissal with prejudice.

### III. Each of Plaintiffs' Section 1983 Claims and All Claims Asserted by Plaintiffs Lucero and Ramirez Should Be Dismissed for Failure to State a Claim.

Rule 12(b)(6) permits a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To satisfy Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim of relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (*citing Twombly*, 550 U.S. at 570). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice to state a plausible claim. *Twombly,* 550 U.S. at 555. Accordingly, in examining a complaint under Rule 12(b)(6), the court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191 (10th Cir. 2012).

Further, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir.2007). This is particularly important with regard to claims asserted against individual defendants, such as Mr. Aragon, in lawsuits alleging claims under 42 U.S.C. Section 1983. As the Tenth Circuit Court of Appeals noted, in *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008),"[i]n Section 1983 cases, plaintiffs often name the governmental agency as well as the individuals who were acting on behalf of the government. Therefore, 'it is particularly important in such circumstances

that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [governmental entity]."

As previously discussed at length herein, Plaintiffs' Complaints almost exclusively consist of vague, non-specific, and conclusory allegations against YCS Defendants collectively relating to alleged deficiencies in the general living conditions at YDDC.  No meaningful attempt is made by Plaintiffs to set forth the actual factual basis surrounding the claims set forth in their Complaints, including basic details, such as the dates the events alleged in their Complaints occurred, the individuals involved, the specific acts and/or omissions allegedly committed by Defendants, and the specific harm or damages suffered as a result of such conduct. Instead, Plaintiffs' Complaints consists of little more than indistinct assertions that Defendants' conduct was unlawful, without any factual allegations to support such conclusions.

Plaintiffs' failure to provide the most basic details regarding their claims is illustrated by the fact that, in their Complaints, Plaintiffs simply assert "each act or omission by Defendants alleged herein occurred at different times and on different days throughout Plaintiffs' residence under the care and custody of CYFD at YDDC." Additionally, the only allegations in Plaintiff Jacob Gonzales' and Plaintiff Dante Woods' Complaints that specifically address any alleged act and/or omission on the part of Mr. Aragon relate to their allegations that Mr. Aragon attacked them without provocation and used excessive force. Even though these allegations specifically mention Mr. Aragon and briefly discuss the facts surrounding the events, such allegations are still legally and factually insufficient to meet their burden of pleading the factual basis for all required elements of their federal claims, pursuant to 42 U.S.C. Section 1983.  Moreover, with regard to Plaintiff Eduardo Lucero and Plaintiff Isaac Ramirez, their Complaints are ***completely devoid*** of any specific allegations pertaining to Mr. Aragon ***whatsoever***.

12

Further, while Plaintiffs allege that Mr. Aragon's actions violated their constitutional rights under the 8th Amendment to be free from cruel and unusual punishment, Plaintiffs do not allege what acts or omission by Mr. Aragon violated their constitutional rights and the specific rights violated. Instead, Plaintiffs simply assert the following bare legal conclusions that: 1) their constitutional rights were violated by YCS Defendants (generally), 2) that such rights were clearly established and any reasonable law enforcement officer would have been aware that the conduct of YCS Defendants, as described in the Complaints violated Plaintiffs' constitutional rights, 3) that the acts and/or omissions of YCS Defendants constituted deliberate indifference to Plaintiffs' rights in light of a substantial risk of harm that would be caused by the grossly negligent and intentional harm through their acts and/or omissions, and 4) that the acts and/or omissions of YCS Defendants on their face shock the conscious in their intentional, willful, wanton, obdurate, and in gross and reckless disregard of the Plaintiffs' constitutional rights. Accordingly, all of the Plaintiffs have failed to plead sufficient factual allegations against Mr. Aragon, individually, to sustain a claim against him under 42 U.S.C. Section 1983 for alleged cruel and unusual punishment in violation of the 8th Amendment. Moreover, Plaintiffs' general allegations against the YCS Defendants collectively regarding alleged deficiencies in their living conditions at YDDC, along with unsupported conclusions of law, are insufficient to support claims against an individual defendant for violations of constitutional rights. *See, e.g., Robbins*, 519 F.3d at 1249-50.

In their Complaints, Plaintiff Lucero, Plaintiff Ramirez, and Plaintiff Gonzales allege that their procedural due process rights were violated contrary to 42 U.S.C. Section 1983. These Plaintiffs' alleged claims are based upon allegations that they were improperly placed in isolation following a fight that they were involved in between YDDC residents from Las Cruces and residents from Albuquerque, which occurred on **March 2, 2012**. Plaintiffs each allege that,

13

after the attack, they were isolated in their cells while YCS Defendants had a pizza party for the Albuquerque residents. They further allege that Defendant Albert Olivas ordered them to remain isolated in their cells for over 72 hours without a timely hearing or any other means of review to ensure that their ongoing isolation was authorized.  Notably, these Plaintiffs have failed to state any specific allegations against Mr. Aragon with regard to this claim.  In addition, as indicated herein, at the time of this fight, Mr. Aragon had already left his employment at YDDC and, therefore, had absolutely no involvement in these events.

Furthermore, NMAC 8.14.14.18-19, which addresses this exact situation, demonstrates that the actions of the YCS Defendants actually involved in these events did not violate these Plaintiffs' procedural due process rights, as this section indicates that a hearing needs to be held within 72 hours following an alleged rule violation by a juvenile.  In addition, the hearing may be postponed or continued after waiver by juvenile or for good cause.  Under these sections, confinement in a room for up to 72 hours is permitted for major rule violations and for safety reasons, as long as the juvenile is checked on every 5 minutes and checks are documented and the confinement is re-evaluated every 24 hours by an impartial administrator. Plaintiffs' Complaints do not indicate the YCS Defendants failed to comply with the provisions of NMAC 8.14.14.18-19 or otherwise acted improperly.  As such, Plaintiffs' claims for violation of their rights to procedural due process fails to state a claim against either Mr. Aragon or the other YCS Defendants, and as such, this claim should be dismissed with regard to Plaintiffs Gonzales, Lucero and Ramirez.

## IV. Entry of a Stay of Discovery Pending Resolution of the Issue of Qualified Immunity is Appropriate.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Issues of qualified immunity are best

resolved at the "earliest possible stage in litigation." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (*quoting Hunter v. Bryant,* 502 U.S. 224, 227 (1991)). The broad protection afforded by qualified immunity gives officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.' " *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001) (*quoting Behrens v. Pelletier,* 516 U.S. 299, 308 (1996)). Accordingly, when the defense of qualified immunity is raised by way of a motion to dismiss or for summary judgment, as a general rule, the Court should stay all discovery until the immunity issue is resolved, unless a plaintiff requires discovery to defend against the assertion of qualified immunity. *See, e.g., Workman v. Jordan,* 958 F.2d 332, 336 (10th Cir.1992); *Todd v. Montoya,* 20111 WL 5238900 (D.N.M. Oct. 4, 2011) (Browning, J.).  Thus, Mr. Aragon respectfully requests that this Court stay all discovery with regard to Plaintiffs' Complaints until a ruling has been made on this Motion.

**WHEREFORE,** Defendant Eddie Aragon, Jr., respectfully requests that this Court enter its Order dismissing with prejudice all of Plaintiffs' state law claims alleged against him on the basis of qualified immunity under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1, et seq.; dismissing Plaintiffs' federal law claims against Mr. Aragon, pursuant to 42 U.S.C. § 1983, and dismissing in its entirety the Complaints filed herein by the Ramirez and Lucero Plaintiffs for failure to state a claim upon which relief can be granted; enter a stay of discovery pending resolution of this Motion; and requests such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**RILEY, SHANE & KELLER, P.A.**

*Electronically signed:*
  */s/* Richard J. Shane
**RICHARD J. SHANE**
**RACHEL M. REINSVOLD**
*Attorney for Defendant Eddie Aragon, Jr.*
3880 Osuna Road, N.E.
Albuquerque, NM  87109
(505) 883-5030
rshane@rsk-law.com
rreinsvold@rsk-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2015, a true and correct copy of the foregoing was e-filed and served through the Court's CM/ECF e-filing system upon the following counsel of record:

James Allen Hayes
The Hayes Law Firm, P.C.
P.O. Box 8214
Santa Fe, NM 87504
(575) 527-4878
thehayeslawfirm@gmail.com

Stephen C. O'Brien
The Revo/Smith Law Firm, LLC
10400 Academy Rd. NE, Ste. 200
Albuquerque, NM 87111

*Attorneys for Plaintiff*

Sean Olivas
Kelleher & McLeod, P.A.
P.O. Box AA
Albuquerque, NM 87103
(505) 346-4646
so@keleher-law.com

*Attorneys for Defendants Albert Olivas, David Pena,*
*Dwayne Pena, Silverio Pena, Michael Gilbert,*
*Gilbert Martinez, Matthew Stephenson,*
*John P. Sweeney, Yolanda Berumen-Deines,*
*and NMCYFD*


*Electronically signed:*
  */s/* Richard J. Shane
**RICHARD J. SHANE**