**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EDUARDO LUCERO,
    Plaintiff,

vs.                                                   No. CIV-14-00393-KG-KK

ALBERT OLIVAS, DAVID PENA, DWANE PENA,
SILVERIO PENA, MICHAEL GILBERT,
EDDIE ARAGON, JR., GILBERT MARTINEZ,
MATTHEW STEPHENSON, JOHN DOE, JANE DOE,
JOHN P. SWEENEY and YOLANDA BERUMEN-DEINES
each in their individual capacities, and the NEW MEXICO
CHILDREN, YOUTH AND FAMILIES DEPARTMENT,
    Defendants.

                                                  *Consolidated with:*

ISAAC RAMIREZ,
    Plaintiff,
vs.                                                   No. CIV-14-00394-KG-KK

OLIVAS, *et al.*,
    Defendants.

                                                  *Consolidated with:*

JACOB GONZALES,
    Plaintiff,
vs.                                                   No. CIV-14-00395-KG-KK

OLIVAS, *et al.*,
    Defendants.

                                                  *Consolidated with:*

DANTE WOODS,
    Plaintiff,
vs.                                                  No. CIV-14-00396-KG-KK

OLIVAS, *et al.*,
    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

        THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiffs'

Premises Liability Claims on the basis of Nonapplicability of Premises Liability Waiver of

Immunity under the New Mexico Tort Claims Act (Motion to Dismiss Premises Liability Claims), filed August 19, 2015.  (Doc. 69).  On September 15, 2015, Plaintiffs responded and Defendants replied on October 9, 2015.  (Docs. 81 and 82).  Having considered Defendants' Motion to Dismiss Premises Liability Claims, the corresponding briefs, and the applicable law the Court hereby denies Defendants' Motion to Dismiss Premises Liability Claims.

A. *Factual Background*

The following background information comes from the well-pleaded facts included in Plaintiffs' Complaints.  Compl. (Doc. 1-1) at 1, *Lucero v. Olivas, et al.*, No. 14-CV-00393 (hereinafter *Lucero* Compl.); Compl. (Doc. 1-1) at 1, *Ramirez v. Olivas, et al.*, No. 14-CV-00394 (hereinafter *Ramirez* Compl.); Compl. (Doc. 1-1) at 1, *Gonzales v. Olivas, et al.*, No. 14-CV-00395 (hereinafter *Gonzales* Compl.); Compl. (Doc. 1-1) at 1, *Woods v. Olivas, et al.*, No. 14-CV-00396 (hereinafter *Woods* Compl.).

a. *Common Allegations*

In January and February 2012, Plaintiffs—children from Las Cruces, New Mexico—were transferred to the New Mexico Children, Youth, and Families Department's (CYFD) Albuquerque facility, the Youth Diagnostic & Development Center (YDDC), from the Las Cruces facility for rehabilitation.[1]  While in custody at the YDDC, Defendants Albert Olivas, David Pena, Dwane Pena, Michael Gilbert, Eddie Aragon, Jr., Gilbert Martinez, Matthew Stephenson, John Doe, and Jane Doe (Defendants Youth Care Specialists) repeatedly denied Plaintiffs access to adequate or sufficient amounts of food.  When Plaintiffs informed Defendants Youth Care Specialists that they were not receiving food on a regular basis, Plaintiffs were told

---

[1] Plaintiff Woods' Complaint, 14-cv-396 (Doc. 1-1) at ¶ 23, does not specifically state that Plaintiff Woods was transferred from the Las Cruces, New Mexico, facility.  This fact, however, is undisputed.  *See* (Doc. 69) at 2 n.1.

2

by Defendants Youth Care Specialists, "That is too bad! It's just the way it is here."[2] *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28. Defendants Youth Care Specialists were also aware that children from Albuquerque, New Mexico, were taking Plaintiffs' food as a form of "rent." *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28. As a result, Plaintiff Lucero lost approximately twenty (20) pounds of his body weight during his three month stay at YDDC. Plaintiff Ramirez lost between fifteen (15) and twenty (20) pounds of his body weight over the same time period. Plaintiff Gonzales lost approximately twenty (20) to twenty-five (25) pounds of his body weight over a two month period. And, Plaintiff Woods lost approximately ten (10) to fifteen (15) pounds of his body weight over a two month period.

Also during Plaintiffs' rehabilitation at the YDDC, Defendants Youth Care Specialists routinely denied Plaintiffs access to the restroom for three (3) to five (5) hours. Children from Albuquerque, on the other hand, were permitted unrestricted restroom access. Consequently, Plaintiffs regularly urinated in their drinking cups.

  b. *Plaintiffs Lucero, Ramirez, and Gonzales*

At some point during their two to three month stay at YDDC, Plaintiffs Lucero, Ramirez, and Gonzales were attacked by nine (9) children from Albuquerque. Defendants Youth Care Specialists allegedly facilitated the attacks because Plaintiffs were from Las Cruces. Midst the attacks, Defendant Albert Olivas (Defendant Olivas) grabbed Plaintiff Gonzales by the neck and threw him on the ground, inflicting further injury and allowing the Albuquerque children to inflict more physical damage. Contemporaneously, Defendant Matthew Stephenson (Defendant

---

[2] It is unclear from Plaintiffs' Complaints whether Defendants Youth Care Specialists stated the aforementioned remark. Plaintiffs' nomenclature repeatedly interchanges from "Defendants Youth Care Specialists" to "Defendants." For purposes of this Motion to Dismiss, the Court presumes Plaintiffs' Complaints reference Defendants Youth Care Specialists.

Stephenson) restrained Plaintiff Ramirez, which allowed the Albuquerque children to inflict additional physical damage to Plaintiff Ramirez. Following the attack, Defendant Stephenson threw Plaintiff Ramirez to the ground. Plaintiff Lucero was also restrained by unidentified "Defendants," who aided in the attack.

Following the attack, Defendant Olivas restrained and dragged Plaintiffs to their cells. Defendant Olivas then threw Plaintiffs on to the cement floors in their cells—causing Plaintiffs' to strike their heads on the floor—and stated, "Las Cruces kids are a bunch of pu****s!" *Lucero* Compl. ¶ 34; *Ramirez* Compl. ¶ 33; *Gonzales* Compl. ¶ 33. Defendant Olivas also ordered Plaintiffs to remain in their cells for seventy-two (72) hours without a hearing regarding the attack. Defendants Youth Care Specialists, meanwhile, held a pizza party for the Albuquerque children who attacked Plaintiffs. Sometime thereafter, YDDC personnel reviewed the video footage of the attack and determined that Plaintiffs were the victims and, thus, no further disciplinary actions were taken against Plaintiffs. It is also alleged that no administrative disciplinary action was taken against Defendants Youth Care Specialists.

Plaintiffs further allege that Defendants Youth Care Specialists permitted children from Albuquerque to take Plaintiffs' mail and stamps. Plaintiffs also allege that their mothers visited them at YDDC and noticed Plaintiffs' weight loss and bruising. Ms. Gabriela Sagarnaga (Ms. Sagarnaga), Plaintiff Lucero's mother, contacted Mr. Rudy Martinez, Plaintiff Lucero's Juvenile Probation Officer, to complain about her son's care and treatment. CYFD did not follow up on the allegations.

At some point, Plaintiffs Lucero and Ramirez were forced to strip off their clothing and bend over with their buttocks spread apart. When Plaintiff Lucero stripped, Defendant Michael Gilbert (Defendant Gilbert) stood behind him and simulated anal sex in front of other children

while stating to Plaintiff Lucero, "You're a fa**ot! You are ready to give it up to me!"[3] *Lucero* Compl. ¶ 27. During Plaintiff Ramirez's incident, Defendant Gilbert Martinez (Defendant Martinez) stood behind Plaintiff Ramirez and made loud lewd sexual comments that were heard by other individuals. Plaintiffs further allege that "Defendants Youth Care Specialists have carried out several instances of simulated anal sex with completely nude Las Cruces children." *Lucero* Compl. ¶ 29, *Ramirez* Compl. ¶ 29.

During Plaintiff Gonzales' stay at the YDDC, Defendant Eddie Aragon Jr. (Defendant Aragon) punched Plaintiff Gonzales, threw him to the cement ground, and then threw him into the window of Plaintiff Gonzales' cell because Defendant Aragon believed Plaintiff was singing. After the incident, Defendant Aragon approached Plaintiff Gonzales from behind while Plaintiff Gonzales was showering. Defendant Aragon instructed Plaintiff Gonzales not to speak to police regarding the incident. Defendant Aragon then shoved Plaintiff Gonzales against the shower wall, struck his face, and pressed his body against Plaintiff Gonzales' genitals.

    c. *Plaintiff Woods*

Plaintiff Woods alleges that while in his cell at the YDDC, Defendant Aragon entered the vicinity and began shouting "Shut the f*** up!" and "Stop making noise you stupid f******!" to all of the children in the area. *Woods* Compl. ¶ 29. Defendant Aragon then entered a nearby cell and attacked a sixteen (16) year-old male because Defendant Aragon thought the boy was singing. Next, Defendant Aragon entered Plaintiff Woods' cell. Plaintiff Woods was sitting on his bed reading a book. Defendant Aragon, without provocation, choked Plaintiff Woods by squeezing his neck. Defendant Aragon also punched Plaintiff Woods in the face, temple, and body, and then threw Plaintiff Woods to the cement ground within the cell. After the incident,

---

[3] It is unclear from the record whether some or all of Defendants Youth Care Specialists were present. *Lucero* Compl. ¶ 28.

Defendant Aragon shouted at Plaintiff Woods, "This isn't over! I am going to get you!" *Id.* at ¶ 33.

Plaintiff Woods further alleges that following the incident Defendant Aragon was not segregated from the children at YDDC by Defendant Olivas. Rather, Defendant Aragon had access to the children and, shortly after the incident, attacked another boy in the shower. Plaintiff Woods also contends that Defendant Aragon ordered two boys to attack him. Finally, Plaintiff Woods states that CYFD hired Defendant Aragon in spite of Defendant Aragon's criminal record of aggravated assault and past gang membership and involvement.

*B. Procedural History*

In January 2014, Plaintiffs filed their individual Complaints in the First Judicial District Court, County of Santa Fe, State of New Mexico. *See Lucero* Compl.; *Ramirez* Compl; *Gonzales* Compl.; *Woods* Compl. On April 28, 2014, Defendants removed this case to federal court. *See* Notice of Removal (Doc. 1), *Lucero v. Olivas, et al.*, No. 14-CV-00393; Notice of Removal (Doc. 1), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; Notice of Removal (Doc. 1), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; Notice of Removal (Doc. 1), *Woods v. Olivas, et al.*, No. 14-CV-00396. On January 14, 2015, this Court consolidated the aforementioned cases for purposes of deciding the pending dispositive motions. (Doc. 36), *Lucero v. Olivas, et al.*, No. 14-CV-00393; (Doc. 15), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; (Doc. 20), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; (Doc. 16), *Woods v. Olivas, et al.*, No. 14-CV-00396.

Plaintiffs bring the consolidated lawsuits against Defendants for alleged violations pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 *et seq.* In Count I, Plaintiffs state a Section 1983 claim for violation of the Eighth Amendment. In Count II, Plaintiffs assert a Section 1983 procedural due process claim under the

Fourteenth Amendment.

In Count III, Plaintiffs allege a Section 1983 claim for supervisory liability under the Eighth Amendment. Count III is specifically asserted against Defendants Silverio Pena, John P. Sweeney (Sweeney), Yolanda Berumen-Deines (Berumen-Deines), in their individual capacities, and CYFD.

In Count IV, Plaintiffs bring a Section 1983 claim for failure to train and supervise under the Eighth and Fourteenth Amendments. Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD are named in Count IV.

In Count V, Plaintiffs allege state tort claims of assault, battery, false imprisonment, and negligence *per se* pursuant to NMSA 2009 § 30-6-1 D(1)–(2) (Crimes Against Children) and NMSA 1978, §§ 30-6a-1 to 30-6a-4 (Sexual Exploitation of Children).

In Count VI, Plaintiffs assert a state tort claim of "negligent operation or maintenance of a public building" pursuant to NMSA 1978, § 41–4–6, against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Finally, in Count VII, Plaintiffs state a claim of negligence resulting in intentional torts and negligence *per se* against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Defendants Olivas, Gilbert, Martinez, David Pena, Dwane Pena, Matthew Stephenson, Silverio Pena, Sweeney, Berumen-Deines, John Doe, and Jane Doe, in their individual capacities, and, CYFD move to dismiss Count VI for failure to state a claim upon which relief can be granted. Plaintiffs oppose Defendants' Motion to Dismiss Premises Liability Claims in its entirety.

  C.  *Standard of Review*

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Granting a Rule 12(b)(6), however, "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quotation omitted).

  D. *Discussion*

Defendants contend Plaintiffs' premises liability claims (Count VI) are subject to dismissal because any alleged negligent supervision should be characterized as an administrative function, which does not waive immunity pursuant to *Archibeque v. Moya*, 1993–NMSC–079 ¶ 8, 866 P.2d 344. Defendants further posit that the NMTCA does not waive immunity for the facts alleged in Plaintiffs' Complaints because Plaintiffs failed to identify dangerous conditions that applied to all of the children at YDDC.

Plaintiffs counter that Defendants knowledge and endorsement of a geographical rivalry

between Las Cruces and Albuquerque children constituted a negligent condition at the YDDC facility. Plaintiffs did not cite any authority for this contention. Plaintiffs also did not respond to Defendants' assertion that the alleged negligent acts fall within administrative functions. Plaintiffs, nonetheless, make a threadbare assertion that CYFD's negligent hiring of Defendant Aragon forms the basis of liability.

The New Mexico legislature enacted the NMTCA in order to implement an instrument to "compensate those injured by the negligence of public employees and to impose duties of reasonable care," all the while limiting "governmental liability so that government should not have the duty to do everything that might be done." *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998–NMSC–049 ¶ 6, 970 P.2d 1143 at 1145 (internal quotation and citation omitted). The NMTCA balances these two important public policies "by providing immunity from tort liability for governmental entities and public employees acting within the scope of their duties, except as that immunity is waived, as relevant here, by" NMSA 1978, § 41–4–6. *Rayos v. State ex rel. N.M. Dep't of Corrs., Adult Prob. & Parole Div.*, 2014–NMCA–103 ¶ 6, 336 P.3d 428, 430. If no specific waiver can be found in the NMTCA, a plaintiff's complaint against a public employee or a governmental entity must be dismissed. *See Begay v. State*, 1985–NMCA–117 ¶ 12, 723 P.2d 252, 256.

Section 41–4–6 of the NMTCA authorizes individual claims against governmental employees and entities, such as Defendants Silverio Pena, Sweeney, Berumen-Deines, and CYFD, based on "the negligence of public employees acting within the scope of their duties in the operation or maintenance of any building . . . ." "For the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a class of users of the building." *Upton v. Clovis Mun. Sch. Dist.*, 2006–NMSC–040 ¶ 8, 141

P.3d 1259, 1261 (citing *Espinoza v. Town of Taos*, 1995–NMSC–070 ¶ 8, 905 P.2d 718, 721 ("the critical question is whether the condition creates a potential risk to the general public"); *Castillo v. County of Santa Fe*, 1988–NMSC–037 ¶ 9, 755 P.2d 48, 51 (holding waiver applies because condition threatened residents of public building and their invitees)).

"Historically, the [NMTCA] waiver under Section 41–4–6 has been interpreted broadly to protect private citizens from the consequences of dangerous conditions created by the negligence of public employees in the 'operation or maintenance' of public buildings." *Upton*, 2006–NMSC–040 ¶ 9, 141 P.3d at 1261.  For instance, New Mexico courts have held that Section 41–4–6 applies to more than the physical aspects of a building, and "includes safety policies necessary to protect the people who use the building."  *Id.* (citing *Castillo*, 1988–NMSC–037 ¶ 9, 755 P.2d at 51; *Leithead v. City of Santa Fe*, 1997–NMCA–041 ¶¶ 12, 15–16, 940 P.2d 459 (city creates dangerous condition if it operates municipal swimming pool with inadequate number of lifeguards)); *see also Callaway v. N.M. Dep't of Corrs.*, 1994–NMCA–049 ¶ 19, 875 P.2d 393, 399 (holding immunity waived because inmate assailant unusually dangerous and prison authorities knew or should have known of danger).

Conversely, New Mexico courts have found that claims for negligent supervision, negligent design, negligent inspection, or administrative functions falls outside the NMTCA's limited waiver of immunity.  *See Espinoza*, 1995–NMSC–070 ¶ 8, 905 P.2d at 721 (internal citations omitted).  Administrative functions include the "security, custody, and classification of inmates." *Archibeque*, 1993–NMSC–079 ¶ 8, 866 P.2d 344, 347.  New Mexico courts, however, recognize "a difference between cases involving only a 'discrete administrative decision' that did not make the premises any more dangerous beyond 'the reasonable and expected risks of prison life,' and the cases demonstrating 'a general condition of unreasonable risk from negligent

security practices,' for which the governmental entity does waive immunity under the [NMTCA.]" *Jackson v. City of Albuquerque*, 2011 WL 5041211, at *2 (N.M. Ct. App.) (citing *Archibeque*, 1993–NMSC–079 ¶ ¶ 17–18, 866 P.2d 344, 350 (Ransom, J., concurring)).

In this matter, viewing the factual allegations as true and in the light most favorable to Plaintiffs, the alleged acts do not parallel administrative functions. In *Archibeque*, the defendant, a prison administrator, negligently failed to check a list of names before placing an inmate into an area of the prison with his known enemy. 1993–NMSC–079 ¶ 2, 866 P.2d at 346. The inmate was subsequently assaulted by the known enemy. *Id.* The New Mexico Supreme Court declined to equate the defendant's action with negligent "operation" of a building under Section 41–4–6. 1993–NMSC–079 ¶ 8, 866 P.2d at 347. The Court held that "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in 41–4–6, does not include the security, custody, and classification of inmates . . . . Section 41–4–6 does not waive immunity when public employees negligently perform such administrative functions." *Id.* The Court reasoned that "[t]o read Section 41–4–6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute." *Id.*

By contrast, in the present case, Plaintiffs allege more than a single discrete administrative decision regarding the security at YDDC. Plaintiffs allege that during a two to three month period they were repeatedly denied sufficient amounts of food resulting in extreme weight loss, assaulted by children from Albuquerque, and physically and sexually assaulted by Defendants Youth Care Specialists. Plaintiffs further allege that Defendants knew or should have known about the food deprivation and assaults. Defendants' alleged failure to address the pattern of risks to Plaintiffs' safety exceeds the boundaries of the type of administrative functions

considered by the *Archibeque* Court.  *Archibeque* does not stand for the proposition that Defendants can "turn a blind eye to threats to their inmates' safety." *Encinias v. Whitener Law Firm, P.A.*, 2013–NMSC–045 ¶ 14, 310 P.3d 611, 618.  Defendants, therefore, are not entitled to immunity under the administrative functions exception.

The Court's analysis, nevertheless, does not end here.  The Court must also determine whether Plaintiffs have adequately stated a negligence claim in order to support a waiver under Section 41–4–6.

The NMTCA is based on traditional tort concepts of duty and a reasonably prudent person's standard of care while performing that duty.  *See* NMSA1978, § 41-4-2(B).  Under New Mexico law, "negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Herrera v. Quality Pontiac*, 2003–NMSC–018 ¶ 6, 73 P.3d 181, 186.  "As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases." *Bober v. N.M. State Fair*, 1991–NMSC–031 ¶ 10, 808 P.2d 614, 618.  Further, to adequately state a claim, a plaintiff may assert that the defendant knew or should have known of the alleged danger. *Herrera*, 2003–NMSC–018 ¶ 22, 73 P.3d at 191 (finding intentional tort of third party not relieve negligent defendant of liability because defendant knew or should have known negligent actions would lead to criminal activity); *Callaway*, 1994–NMCA–049 ¶ 19, 875 P.2d at 399 (holding immunity waived because inmate assailant unusually dangerous and prison authorities knew or should have known of danger). Accordingly, in order to determine whether Plaintiffs have stated a plausible claim, the Court must answer the following questions:  (1) whether Plaintiffs allege that Defendants knew or should have known about the dangerous conditions—Defendants Youth Care Specialists and their encouragement of the geographical rivalry between Las Cruces and Albuquerque children;

and (2) whether the dangerous condition was foreseeable.

Here, viewing the factual allegations as true and in the light most favorable to Plaintiffs, Plaintiffs have pled sufficient facts to state a claim for negligence under Section 41–4–6. Plaintiffs allege that they informed Defendants Youth Care Specialists that Albuquerque children were taking their food. Despite that information, Defendants allowed for the practice of "paying rent" to the Albuquerque children to continue. The practice resulted in each Plaintiff losing approximately ten (10) to twenty-five (25) pounds over a two- to three-month period. It is reasonable to infer that if Plaintiffs' mothers noticed the drastic weight loss that Defendants should have also noticed the change in Plaintiffs' appearances. In fact, Plaintiff Lucero's appearance caused his mother such concern that she contacted Plaintiff Lucero's probation officer. CYFD, nevertheless, did not follow up on the report.

Furthermore, Plaintiffs assert that over the course of two to three months, Plaintiffs were physically and sexually assaulted by Albuquerque children and Defendants Youth Care Specialists. At one point, Defendants Youth Care Specialists allowed nine or more Albuquerque children to physically assault Plaintiffs. During the assault, Defendants assisted by restraining Plaintiffs. And, after the assault, Defendant Olivas dragged Plaintiffs to their cells, threw them on the cement floors—causing Plaintiffs' to strike their heads on the floor—and stated, "Las Cruces kids are a bunch of pu****s!" *Lucero* Compl. ¶ 34; *Ramirez* Compl. ¶ 33; *Gonzales* Compl. ¶ 33. Defendant Youth Care Specialists then provided pizza for the Albuquerque children that perpetrated the assault. When YDDC personnel reviewed the video footage, it was determined that Plaintiffs were the victims. YDDC personnel, however, did not take any administrative disciplinary action toward Defendants Youth Care Specialists.

Plaintiffs also allege that Defendants Youth Care Specialists, on multiple occasions,

denied them access to the restroom, thereby, forcing Plaintiffs to urinate in their drinking cups. The Albuquerque children, on the other hand, were allowed unrestricted access to the restrooms.

In regard to specific Defendants, Plaintiffs allege that Defendants Aragon, Gilbert and Martinez sexually assaulted the Plaintiffs by making lewd comments and simulating anal sex with Plaintiffs in front of other children and Defendants Youth Care Specialists. Defendant Aragon also repeatedly assaulted Plaintiffs. Plaintiffs assert that they provided written notice of the aforementioned incidents to CYFD and YDDC.

Based on the foregoing, the Court finds that Plaintiffs' Complaints sufficiently allege that Defendants knew or should have known Defendants Youth Care Specialists' actions would pose a danger to the Las Cruces children. Further, Plaintiffs sufficiently pled that Defendants were on notice of the foreseeable dangerous condition: YDDC personnel reviewed the video footage of the assault; Ms. Sagarnaga complained about Plaintiff Lucero's weight loss and bruising; and Plaintiffs provided written notices of the incidents. Plaintiffs' Complaints, viewing the allegations as true, also evidence that a jury could reasonably find that Defendants had a minimum duty to take some action to prevent the continued assaults, threats, and deprivation of food. *See Herrera*, 2003–NMSC–018 ¶ 22, 73 P.3d at 191. The Court, therefore, finds that Plaintiffs' pleadings sufficiently state a negligence claim under Section 41–4–6.

The Court further finds no merit in Defendants' contentions that Plaintiffs' premises liability claims do not satisfy Section 41–4–6 waiver because the claims equate to negligent supervision. A negligent supervision claim, on its own, will not waive immunity. *Espinoza*, 1995–NMSC–070 ¶ 8, 905 P.2d at 721. A claim is sufficient to bring a cause of action within the waiver of immunity created by the NMTCA when a plaintiff pleads allegations that go beyond negligent supervision. *Cf. Espinoza*, 1995–NMSC–070 ¶ 14, 905 P.2d at 722 (pleading

that demonstrates defendant negligently created unsafe premises presenting potential risk to general public is more than claim of negligent supervision).  As previously addressed by this Court, Plaintiffs have sufficiently plead facts demonstrating that Defendants' negligence created the dangerous condition at YDDC.

The Court also finds no merit in Defendants' assertion that Plaintiffs must show that the dangerous condition posed a risk to *all* of the children at YDDC.  It is well established that "[f]or the waiver to apply, the negligent 'operation or maintenance' must create a dangerous condition that threatens the general public or a *class of users of the building*."  *Upton*, 2006–NMSC–040 ¶ 8, 141 P.3d at 1261 (emphasis added) (citing *Espinoza*, 1995–NMSC–070 ¶ 8, 905 P.2d at 721 ("the critical question is whether the condition creates a potential risk to the general public"), and *Castillo*, 1988–NMSC–037 ¶ 9, 755 P.2d at 51 (holding waiver applies because condition threatened residents of public building and their invitees)).

Here, Plaintiffs allege that the Las Cruces children were at risk.  Unlike *Archibeque*, where a single prisoner was placed in danger, Plaintiffs allege that Defendants Youth Care Specialists were targeting Las Cruces children, thereby placing the group as a whole at risk.  Although Defendants Youth Care Specialists did not present a danger to all of the children at YDDC, the Defendants Youth Care Specialists did present a foreseeable danger to a subset of children in the care and custody of CYFD.  Hence, the Court finds that Plaintiffs' allegations satisfy the requirement that Defendants' negligence placed more than a single individual in danger.  Immunity, therefore, is waived under Section 41–4–6.

Accordingly, it is ordered that Defendants' Motion to Dismiss Plaintiffs' Premises Liability Claims on the basis of Nonapplicability of Premises Liability Waiver of Immunity under the New Mexico Tort Claims Act (Doc. 69) is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE