**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

EDUARDO LUCERO,
    Plaintiff,

vs.                                                                                    No. CIV-14-00393-KG-KK

ALBERT OLIVAS, DAVID PENA, DWANE PENA,
SILVERIO PENA, MICHAEL GILBERT,
EDDIE ARAGON, JR., GILBERT MARTINEZ,
MATTHEW STEPHENSON, JOHN DOE, JANE DOE,
JOHN P. SWEENEY and YOLANDA BERUMEN-DEINES
each in their individual capacities, and the NEW MEXICO
CHILDREN, YOUTH AND FAMILIES DEPARTMENT,
    Defendants.

                                                                              *Consolidated with:*

ISAAC RAMIREZ,
    Plaintiff,
vs.                                                                        No. CIV-14-00394-KG-KK

OLIVAS, *et al.*,
    Defendants.

                                                                 *Consolidated with:*

JACOB GONZALES,
    Plaintiff,
vs.                                                                     No. CIV-14-00395-KG-KK

OLIVAS, *et al.*,
    Defendants.

                                                                 *Consolidated with:*

DANTE WOODS,
    Plaintiff,
vs.                                                                     No. CIV-14-00396-KG-KK

OLIVAS, *et al.*,
    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

        THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiffs'

Complaints for Violations of the New Mexico Tort Claims Act because Defendants are not Law

Enforcement Officers (Motion to Dismiss NMTCA Claims), filed August 19, 2015. (Doc. 71). On September 15, 2015, Plaintiffs responded and Defendants replied on October 9, 2015. (Docs. 80 and 84). Having considered Defendants' Motion to Dismiss NMTCA Claims, the corresponding briefs, and the applicable law the Court hereby denies Defendants' Motion to Dismiss NMTCA Claims.

A. *Factual Background*

The following background information comes from the well-pleaded facts included in Plaintiffs' Complaints. Compl. (Doc. 1-1) at 1, *Lucero v. Olivas, et al.*, No. 14-CV-00393 (hereinafter *Lucero* Compl.); Compl. (Doc. 1-1) at 1, *Ramirez v. Olivas, et al.*, No. 14-CV-00394 (hereinafter *Ramirez* Compl.); Compl. (Doc. 1-1) at 1, *Gonzales v. Olivas, et al.*, No. 14-CV-00395 (hereinafter *Gonzales* Compl.); Compl. (Doc. 1-1) at 1, *Woods v. Olivas, et al.*, No. 14-CV-00396 (hereinafter *Woods* Compl.).

a. *Common Allegations*

In January and February 2012, Plaintiffs—children from Las Cruces, New Mexico—were transferred to the New Mexico Children, Youth, and Families Department's (CYFD) Albuquerque facility, the Youth Diagnostic & Development Center (YDDC), from the Las Cruces facility for rehabilitation.[1] While in custody at the YDDC, Defendants Albert Olivas, David Pena, Dwane Pena, Michael Gilbert, Eddie Aragon, Jr., Gilbert Martinez, Matthew Stephenson, John Doe, and Jane Doe (Defendants Youth Care Specialists) repeatedly denied Plaintiffs access to adequate or sufficient amounts of food. When Plaintiffs informed Defendants Youth Care Specialists that they were not receiving food on a regular basis, Plaintiffs were told

---

[1] Plaintiff Woods' Complaint, 14-cv-396 (Doc. 1-1) at ¶ 23, does not specifically state that Plaintiff Woods was transferred from the Las Cruces, New Mexico, facility. This fact, however, is undisputed. *See* (Doc. 69) at 2 n.1.

by Defendants Youth Care Specialists, "That is too bad! It's just the way it is here."[2] *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28. Defendants Youth Care Specialists were also aware that children in YDDC from Albuquerque, New Mexico, were taking Plaintiffs' food as a form of "rent." *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28. As a result, Plaintiff Lucero lost approximately twenty (20) pounds of his body weight during his three month stay at YDDC. Plaintiff Ramirez lost between fifteen (15) and twenty (20) pounds of his body weight over the same time period. Plaintiff Gonzales lost approximately twenty (20) to twenty-five (25) pounds of his body weight over a two month period. And, Plaintiff Woods lost approximately ten (10) to fifteen (15) pounds of his body weight over a two month period.

Also during Plaintiffs' rehabilitation at the YDDC, Defendants Youth Care Specialists routinely denied Plaintiffs access to the restroom for three (3) to five (5) hours. Children from Albuquerque, on the other hand, were permitted unrestricted restroom access. Consequently, Plaintiffs regularly urinated in their drinking cups.

      b. *Allegations of Plaintiffs Lucero, Ramirez, and Gonzales*

At some point during their two to three month stay at YDDC, Plaintiffs Lucero, Ramirez, and Gonzales were attacked by nine (9) children from Albuquerque. Defendants Youth Care Specialists facilitated the attacks because Plaintiffs were from Las Cruces. Midst the attacks, Defendant Albert Olivas (Defendant Olivas) grabbed Plaintiff Gonzales by the neck and threw him on the ground, inflicting further injury and allowing the Albuquerque children to inflict more physical damage. Contemporaneously, Defendant Matthew Stephenson (Defendant Stephenson) restrained Plaintiff Ramirez, which allowed the Albuquerque children to inflict

---

[2] It is unclear from Plaintiffs' Complaints whether Defendants Youth Care Specialists stated the aforementioned remark. Plaintiffs' nomenclature repeatedly interchanges from "Defendants Youth Care Specialists" to "Defendants."

additional physical damage to Plaintiff Ramirez.  Following the attack, Defendant Stephenson threw Plaintiff Ramirez to the ground.  Plaintiff Lucero was also restrained by unidentified "Defendants," who aided in the attack.

Following the attack, Defendant Olivas restrained and dragged Plaintiffs to their cells.  Defendant Olivas then threw Plaintiffs on to the cement floors in their cells—causing Plaintiffs' to strike their heads on the floor—and stated, "Las Cruces kids are a bunch of pu****s!"  *Lucero* Compl. ¶ 34; *Ramirez* Compl. ¶ 33; *Gonzales* Compl. ¶ 33.  Defendant Olivas also ordered Plaintiffs to remain in their cells for seventy-two (72) hours without a hearing regarding the attack.  Defendants Youth Care Specialists, meanwhile, held a pizza party for the Albuquerque children who attacked Plaintiffs.  Sometime thereafter, YDDC personnel reviewed the video footage of the attack and determined that Plaintiffs were the victims and, thus, no further disciplinary actions were taken against Plaintiffs.  It is also alleged that no administrative disciplinary action was taken against Defendants Youth Care Specialists.

Plaintiffs further allege that Defendants Youth Care Specialists permitted children from Albuquerque to take Plaintiffs' mail and stamps.  Plaintiffs also allege that their mothers visited them at YDDC and noticed Plaintiffs' weight loss and bruising.  Gabriela Sagarnaga, Plaintiff Lucero's mother, contacted his probation officer, Rudy Martinez, to complain about her son's care and treatment.  CYFD did not follow up on the allegations.

At some point, Plaintiffs Lucero and Ramirez were forced to strip off their clothing and bend over with their buttocks spread apart.  When Plaintiff Lucero stripped, Defendant Michael Gilbert (Defendant Gilbert) stood behind him and simulated anal sex in front of other children while stating to Plaintiff Lucero, "You're a fa**ot!  You are ready to give it up to me!"[3]  *Lucero*

---

[3] It is unclear from the record whether some or all of Defendants Youth Care Specialists were present.  *Lucero* Compl. ¶ 28.

Compl. ¶ 27.  During Plaintiff Ramirez's incident, Defendant Gilbert Martinez (Defendant Martinez) stood behind Plaintiff Ramirez and made loud lewd sexual comments that were heard by other individuals.  Plaintiffs further allege that "Defendants Youth Care Specialists have carried out several instances of simulated anal sex with completely nude Las Cruces children." *Lucero* Compl. ¶ 29, *Ramirez* Compl. ¶ 29.

During Plaintiff Gonzales' stay at the YDDC, Defendant Eddie Aragon Jr. (Defendant Aragon) punched Plaintiff Gonzales, threw him to the cement ground, and then threw him into the window of Plaintiff Gonzales' cell because Defendant Aragon believed Plaintiff was singing.  After the incident, Defendant Aragon approached Plaintiff Gonzales from behind while Plaintiff Gonzales was showering.  Defendant Aragon instructed Plaintiff Gonzales not to speak to police regarding the incident.  Defendant Aragon then shoved Plaintiff Gonzales against the shower wall, struck his face, and pressed his body against Plaintiff Gonzales' genitals.

      *c. Allegations of Plaintiff Woods*

Plaintiff Woods alleges that while in his cell at the YDDC, Defendant Aragon entered the vicinity and began shouting "Shut the f*** up!" and "Stop making noise you stupid f******!" to all of the children in the area.  *Woods* Compl. ¶ 29.  Defendant Aragon then entered a nearby cell and attacked a sixteen (16) year-old male because Defendant Aragon thought the boy was singing.  Next, Defendant Aragon entered Plaintiff Woods' cell.  Plaintiff Woods was sitting on his bed reading a book.  Defendant Aragon, without provocation, choked Plaintiff Woods by squeezing his neck.  Defendant Aragon also punched Plaintiff Woods in the face, temple, and body, and then threw Plaintiff Woods to the cement ground within the cell.  After the incident, Defendant Aragon shouted at Plaintiff Woods, "This isn't over! I am going to get you!"  *Id.* at ¶ 33.

Plaintiff Woods further alleges that following the incident Defendant Aragon was not segregated from the children at YDDC by Defendant Olivas. Rather, Defendant Aragon had access to the children and, shortly after the incident, attacked another boy in the shower. Plaintiff Woods also contends that Defendant Aragon ordered two boys to attack him. Finally, Plaintiff Woods states that CYFD hired Defendant Aragon in spite of Defendant Aragon's criminal record of aggravated assault and past gang membership and involvement.

*B. Procedural History*

Plaintiffs filed their individual Complaints in January 2014 in the First Judicial District Court, County of Santa Fe, State of New Mexico. *See Lucero* Compl.; *Ramirez* Compl; *Gonzales* Compl.; *Woods* Compl. On April 28, 2014, Defendants removed this case to federal court. *See* Notice of Removal (Doc. 1), *Lucero v. Olivas, et al.*, No. 14-CV-00393; Notice of Removal (Doc. 1), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; Notice of Removal (Doc. 1), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; Notice of Removal (Doc. 1), *Woods v. Olivas, et al.*, No. 14-CV-00396. On January 14, 2015, this Court consolidated the aforementioned cases for purposes of deciding the pending dispositive motions. (Doc. 36), *Lucero v. Olivas, et al.*, No. 14-CV-00393; (Doc. 15), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; (Doc. 20), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; (Doc. 16), *Woods v. Olivas, et al.*, No. 14-CV-00396.

Plaintiffs bring the consolidated lawsuits against Defendants for alleged violations pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 *et seq.* In Count I, Plaintiffs state a Section 1983 claim for violation of the Eighth Amendment. In Count II, Plaintiffs assert a Section 1983 procedural due process claim under the Fourteenth Amendment.

In Count III, Plaintiffs allege a Section 1983 claim for supervisory liability under the

Eighth Amendment. Count III specifically is asserted against Defendants Silverio Pena, John P. Sweeney (Sweeney), and Yolanda Berumen-Deines (Berumen-Deines), in their individual capacities, and CYFD.

In Count IV, Plaintiffs bring a Section 1983 claim for failure to train and supervise under the Eighth and Fourteenth Amendments. Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD are named in Count IV.

In Count V, Plaintiffs allege state tort claims of assault, battery, false imprisonment, and negligence *per se* pursuant to NMSA 1978, § 30-6-1 D(1)–(2) (Crimes Against Children) and NMSA 1978, §§ 30-6A-1 to 30-6A-4 (Sexual Exploitation of Children).

In Count VI, Plaintiffs assert a state tort claim of "negligent operation or maintenance of a public building" pursuant to NMSA 1978, § 41–4–6, against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Finally, in Count VII, Plaintiffs state a claim of negligence resulting in intentional torts and negligence *per se* against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Defendants Olivas, Gilbert, Martinez, David Pena, Dwane Pena, Matthew Stephenson, Silverio Pena, Sweeney, Berumen-Deines, John Doe, and Jane Doe, in their individual capacities, and, CYFD move to dismiss Plaintiffs' NMTCA claims (Count V and Count VII), for failure to state a claim upon which relief can be granted. Plaintiffs oppose Defendants' Motion to Dismiss NMTCA Claims in its entirety.

C. *Standard of Review*

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon*

*v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Granting a Rule 12(b)(6), however, "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quotation omitted).

D. Discussion

Defendants move for dismissal of Plaintiffs' state claims (Count V and Count VII) because Defendants are not law enforcement officers pursuant to the NMTCA and, therefore, are immune.

The New Mexico legislature enacted the NMTCA in order to implement an instrument to "compensate those injured by the negligence of public employees and to impose duties of reasonable care," all the while limiting "governmental liability so that government should not have the duty to do everything that might be done." *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998–NMSC–049 ¶ 6, 970 P.2d 1143 at 1145 (internal quotation and citation omitted). The NMTCA balances these two important public policies "by providing immunity from tort liability

for governmental entities and public employees acting within the scope of their duties, except as that immunity is waived, as relevant here, by" NMSA 1978, § 41–4–12. *Rayos v. State ex rel. N.M. Dep't of Corrs., Adult Prob. & Parole Div.*, 2014–NMCA–103 ¶ 6, 336 P.3d 428, 430. If no specific waiver can be found in the NMTCA, a plaintiff's complaint against a public employee or a governmental entity must be dismissed. *See Begay v. State*, 1985–NMCA–117 ¶ 12, 723 P.2d 252, 256.

Section 41–4–12 of the NMTCA "provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort." *Oliveros v. Mitchell*, 449 F.3d 1091, 1096 (citation omitted). Section 41–4–12 specifically states:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Therefore, in order to state a claim under Section 41–4–12, a plaintiff must show that a defendant was a law enforcement officer acting within the scope of his/her duty, and that the plaintiff's injuries arose out of either the deprivation of a right secured by law or an enumerated tort in Section 41–4–12. *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996–NMSC–021 ¶ 7, 916 P.2d 1313, 1316.

A law enforcement officer is defined as a "full time salaried public employee of a governmental entity . . . whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." NMSA 1978, § 41–4–3(D). The courts construe this definition strictly. *See Montes v. Gallegos*, 812 F. Supp. 1165, 1172

(D.N.M. 1992) (holding mayor not law enforcement officer, notwithstanding his statutory authority and obligation to exercise law enforcement functions); *Dunn v. McFeeley*, 1999–NMCA–084 ¶ 25, 984 P.2d 760, 767 (finding medical investigator and crime laboratory technician not law enforcement officers); *Coyazo v. State*, 1995–NMCA–056 ¶ 18, 897 P.2d 234, 237–38 (concluding district attorney and staff not law enforcement officers); *Dunn v. State ex rel. Tax & Rev. Dep't*, 1993–NMCA–059 ¶ 11, 859 P.2d 469, 472 (holding Director of Motor Vehicle Division, although invested with power to act as "peace officer," "did not serve as a full-time law enforcement officer whose principal duties involved holding in custody persons accused of a criminal offense . . . .") (internal quotation omitted); *Vigil v. Martinez*, 1992–NMCA–033 ¶¶ 17–20, 832 P.2d 405, 411–12 (finding probation and parole officers not law enforcement officers); *Anchondo v. Corr. Dep't*, 1983–NMSC–051 ¶ 14, 666 P.2d 1255, 1258 (concluding Secretary of Corrections and Warden of state penitentiary not law enforcement). And, particularly relevant to this case, the New Mexico Supreme Court has held that penitentiary correctional officers, notwithstanding their statutory power to make arrests, are not law enforcement officers under the NMTCA. *Callaway v. N.M. Dep't of Corr.*, 1994–NMCA–049 ¶¶ 9–11, 875 P.2d 393, 397. There is no authority in New Mexico, however, that answers the question of whether Defendants—employees of CYFD—are law enforcement officers. The Court, therefore, is tasked with analyzing whether Defendants' principal duties qualify as "law enforcement officers" under Section 41–4–3(D). *See Callaway*, 1994–NMCA–049, 875 P.2d 393; *Vigil*, 1992–NMCA–033, 832 P.2d 405.

Defendants request that the Court take judicial notice of two online government sources that purportedly describe Defendants' positions. The first source describes the Probation Officers and Correctional Treatment Specialists positions. (Doc. 71) at 3–4. The second source

explains the purpose of the Youth Care Specialist position and employment qualifications. *Id.* at 4.

In general, a motion to dismiss is converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999); Fed. R. Civ. P. 12(d).  A court, however, may properly consider facts subject to judicial notice, state court proceedings, and matters of public record without converting a motion to dismiss into a motion for summary judgment.  *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  State administrative regulations are subject to judicial notice.  *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 743 n.4 (1976) (taking judicial notice of Maryland Board of Public Works regulation); *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of [state] agency rules and regulations"). "Public records and government documents are generally considered not to be subject to reasonable dispute.  This includes public records and government documents available from reliable sources on the Internet." *Wood v. Wells Fargo Bank, N.A.*, 2013 WL 5763101, at *5 (D. Colo.) (internal quotation and citation omitted).

Here, Defendants' job descriptions presumably are from government sources.  The first source, published on July 7, 2001, and revised on September 20, 2011, details the occupational duties for Probation Officers and Correctional Treatment Specialists in three different class grades.  Although Defendants contend that "New Mexico classifies the Youth Care Specialist position under Probation Officers and Correctional Treatment Specialists," Defendants have proffered no evidence for this contention. (Doc. 71) at 3; *see also Vigil*, 1992–NMCA–033 ¶¶ 14–19, 832 P.2d at 409–12 (comparing affidavit job description with law enforcement officer statutory definition).  Notably, the parties' briefs label Defendants as "Youth Care Specialists."

At no time, to the Court's knowledge, have the parties referenced Defendants as "Probation Officers" or "Correctional Treatment Specialists."

Defendants rely solely on the "Occupation Description" section. Defendants do not cite the principal duties, however, which appear under the "Nature of Work" section. As a result, this source is not reliable. It is well established in New Mexico that the proper analysis mandates comparing the statutory definition of a law enforcement officer with the defendant's principal duties—not a general description. *See Montes*, 812 F. Supp. at 1172 (D.N.M. 1992); *Dunn*, 1999–NMCA–084 ¶ 25, 984 P.2d at 767; *Coyazo*, 1995–NMCA–056 ¶ 18, 897 P.2d at 237–38; *Callaway*, 1994–NMCA–049 ¶¶ 9–11, 875 P.2d at 397; *Dunn*, 1993–NMCA–059 ¶ 11, 859 P.2d at 472; *Vigil*, 1992–NMCA–033 ¶¶ 17–20, 832 P.2d at 411–12; *Anchondo*, 1983–NMSC–051 ¶ 14, 666 P.2d at 1258.

The second source which describes the Youth Care Specialist position was posted online on or around April 30, 2014. This source is also unreliable. The incidents at issue in this case allegedly took place between January 2012 and April 2012—approximately two years *prior* to the publication of the Youth Care Specialist job description. Defendants have failed to present any evidence that the source reliably reflects Defendants' principal duties at the time of the alleged incidents. Defendants' arguments alone are insufficient to establish that the sources reliably represent Defendants' principal duties between January 2012 and April 2012.

Due to the foregoing defects, the Court finds that the two government sources are not reliable and, thus, the Court declines to take judicial notice of either source. Accordingly, the Court cannot, and need not, analyze whether Defendants' qualify as law enforcement officers for purposes of waiver of immunity under the NMTCA. It is therefore ordered that Defendants' Motion to Dismiss NMTCA Claims is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE