IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

EDUARDO LUCERO,
      Plaintiff,

vs.                                          No. CIV-14-00393-KG-KK

ALBERT OLIVAS, DAVID PENA, DWANE PENA,
SILVERIO PENA, MICHAEL GILBERT,
EDDIE ARAGON, JR., GILBERT MARTINEZ,
MATTHEW STEPHENSON, JOHN DOE, JANE DOE,
JOHN P. SWEENEY and YOLANDA BERUMEN-DEINES
each in their individual capacities, and the NEW MEXICO
CHILDREN, YOUTH AND FAMILIES DEPARTMENT,
      Defendants.

*Consolidated with:*

ISAAC RAMIREZ,
      Plaintiff,
vs.                                          No. CIV-14-00394-KG-KK

OLIVAS, *et al.*,
      Defendants.

*Consolidated with:*

JACOB GONZALES,
      Plaintiff,
vs.                                          No. CIV-14-00395-KG-KK

OLIVAS, *et al.*,
      Defendants.

*Consolidated with:*

DANTE WOODS,
      Plaintiff,
vs.                                        No. CIV-14-00396-KG-KK

OLIVAS, *et al.*,
      Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court upon Defendant Eddie Aragon Jr.'s Motion for

Judgment on the Pleadings and for Stay of Discovery (Motion for Judgment on the Pleadings),

filed January 22, 2015.[1]  (Doc. 37).  On March 4, 2015, Plaintiffs responded and Defendant Aragon replied on March 23, 2015.  (Docs. 46 and 47).  Having considered Defendant Aragon's Motion for Judgment on the Pleadings, the corresponding briefs, and the applicable law the Court hereby denies, in part, grants, in part, and holds in abeyance, in part, Defendant Aragon's Motion for Judgment on the Pleadings.

### A.  Factual Background

The following background information comes from the well-pleaded facts included in Plaintiffs' Complaints.  Compl. (Doc. 1-1) at 1, *Lucero v. Olivas, et al.*, No. 14-CV-00393 (hereinafter *Lucero* Compl.); Compl. (Doc. 1-1) at 1, *Ramirez v. Olivas, et al.*, No. 14-CV-00394 (hereinafter *Ramirez* Compl.); Compl. (Doc. 1-1) at 1, *Gonzales v. Olivas, et al.*, No. 14-CV-00395 (hereinafter *Gonzales* Compl.); Compl. (Doc. 1-1) at 1, *Woods v. Olivas, et al.*, No. 14-CV-00396 (hereinafter *Woods* Compl.).

#### a.  Common Allegations

In January and February 2012, Plaintiffs—children from Las Cruces, New Mexico—were transferred to the New Mexico Children, Youth, and Families Department's (CYFD) Albuquerque facility, the Youth Diagnostic & Development Center (YDDC), from the Las Cruces facility for rehabilitation.[2]  While in custody at the YDDC, Defendants Albert Olivas, David Pena, Dwane Pena, Michael Gilbert, Eddie Aragon, Jr., Gilbert Martinez, Matthew Stephenson, John Doe, and Jane Doe (Defendants Youth Care Specialists) repeatedly denied Plaintiffs access to adequate or sufficient amounts of food.  When Plaintiffs informed Defendants Youth Care Specialists that they were not receiving food on a regular basis, Plaintiffs were told

---

[1]  On June 5, 2015, the Court denied Defendant Aragon's Motion for Stay of Discovery.  (Doc. 53).

[2]  Plaintiff Woods' Complaint, 14-cv-396 (Doc. 1-1) at ¶ 23, does not specifically state that Plaintiff Woods was transferred from the Las Cruces, New Mexico, facility.  This fact, however, is undisputed.  *See* (Doc. 69) at 2 n.1.

by Defendants Youth Care Specialists, "That is too bad!  It's just the way it is here."[3]  *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28.  Defendants Youth Care Specialists were also aware that children from Albuquerque, New Mexico, were taking Plaintiffs' food as a form of "rent."  *Lucero* Compl. ¶ 26; *Ramirez* Compl. ¶ 26; *Gonzales* Compl. ¶ 26; *Woods* Compl. ¶ 28.  As a result, Plaintiff Lucero lost approximately twenty (20) pounds of his body weight during his three month stay at YDDC.  Plaintiff Ramirez lost between fifteen (15) and twenty (20) pounds of his body weight over the same time period.  Plaintiff Gonzales lost approximately twenty (20) to twenty-five (25) pounds of his body weight over a two month period.  And, Plaintiff Woods lost approximately ten (10) to fifteen (15) pounds of his body weight over a two month period.

Also during Plaintiffs' rehabilitation at the YDDC, Defendants Youth Care Specialists routinely denied Plaintiffs access to the restroom for three (3) to five (5) hours.  Children from Albuquerque, on the other hand, were permitted unrestricted restroom access.  Consequently, Plaintiffs regularly urinated in their drinking cups.

### b.  Allegations of Plaintiffs Lucero, Ramirez, and Gonzales

At some point during their two to three month stay at YDDC, Plaintiffs Lucero, Ramirez, and Gonzales were attacked by nine (9) children from Albuquerque.  Defendants Youth Care Specialists allegedly facilitated the attacks because Plaintiffs were from Las Cruces.  Midst the attacks, Defendant Albert Olivas (Defendant Olivas) grabbed Plaintiff Gonzales by the neck and threw him on the ground, inflicting further injury and allowing the Albuquerque children to inflict more physical damage.  Contemporaneously, Defendant Matthew Stephenson (Defendant Stephenson) restrained Plaintiff Ramirez, which allowed the Albuquerque children to inflict

---

[3]  It is unclear from Plaintiffs' Complaints whether Defendants Youth Care Specialists stated the aforementioned remark.  Plaintiffs' nomenclature repeatedly interchanges from "Defendants Youth Care Specialists" to "Defendants."

additional physical damage to Plaintiff Ramirez.  Following the attack, Defendant Stephenson

threw Plaintiff Ramirez to the ground.  Plaintiff Lucero was also restrained by unidentified

"Defendants," who aided in the attack.

 Following the attack, Defendant Olivas restrained and dragged Plaintiffs to their cells.

Defendant Olivas then threw Plaintiffs on to the cement floors in their cells—causing Plaintiffs

to strike their heads on the floor—and stated, "Las Cruces kids are a bunch of pu****s!"  *Lucero*

Compl. ¶ 34; *Ramirez* Compl. ¶ 33; *Gonzales* Compl. ¶ 33.  Defendant Olivas also ordered

Plaintiffs to remain in their cells for seventy-two (72) hours without a hearing regarding the

attack.  Defendants Youth Care Specialists, meanwhile, held a pizza party for the Albuquerque

children who attacked Plaintiffs.  Sometime thereafter, YDDC personnel reviewed the video

footage of the attack and determined that Plaintiffs were the victims and, thus, no further

disciplinary actions were taken against Plaintiffs.  It is also alleged that no administrative

disciplinary action was taken against Defendants Youth Care Specialists.

 Plaintiffs further allege that Defendants Youth Care Specialists permitted children from

Albuquerque to take Plaintiffs' mail and stamps.  Plaintiffs also allege that their mothers visited

them at YDDC and noticed Plaintiffs' weight loss and bruising.  Ms. Gabriela Sagarnaga (Ms.

Sagarnaga), Plaintiff Lucero's mother, contacted Mr. Rudy Martinez, Plaintiff Lucero's Juvenile

Probation Officer, to complain about her son's care and treatment.  CYFD did not follow up on

the allegations.

 At some point, Plaintiffs Lucero and Ramirez were forced to strip off their clothing and

bend over with their buttocks spread apart.  When Plaintiff Lucero stripped, Defendant Michael

Gilbert (Defendant Gilbert) stood behind him and simulated anal sex in front of other children

4

while stating to Plaintiff Lucero, "You're a fa**ot!  You are ready to give it up to me!"[4]  *Lucero*

Compl. ¶ 27.  During Plaintiff Ramirez's incident, Defendant Gilbert Martinez (Defendant

Martinez) stood behind Plaintiff Ramirez and made loud lewd sexual comments that were heard

by other individuals.  Plaintiffs further allege that "Defendants Youth Care Specialists have

carried out several instances of simulated anal sex with completely nude Las Cruces children."

*Lucero* Compl. ¶ 29, *Ramirez* Compl. ¶ 29.

During Plaintiff Gonzales' stay at the YDDC, Defendant Eddie Aragon Jr. (Defendant

Aragon) punched Plaintiff Gonzales, threw him to the cement ground, and then threw him into

the window of Plaintiff Gonzales' cell because Defendant Aragon believed Plaintiff was singing.

After the incident, Defendant Aragon approached Plaintiff Gonzales from behind while Plaintiff

Gonzales was showering.  Defendant Aragon instructed Plaintiff Gonzales not to speak to police

regarding the incident.  Defendant Aragon then shoved Plaintiff Gonzales against the shower

wall, struck his face, and pressed his body against Plaintiff Gonzales' genitals.

   *c.  Allegations of Plaintiff Woods*

Plaintiff Woods alleges that while in his cell at the YDDC, Defendant Aragon entered the

vicinity and began shouting "Shut the f*** up!" and "Stop making noise you stupid f******!" to

all of the children in the area.  *Woods* Compl. ¶ 29.  Defendant Aragon then entered a nearby cell

and attacked a sixteen (16) year-old male because Defendant Aragon thought the boy was

singing.  Next, Defendant Aragon entered Plaintiff Woods' cell.  Plaintiff Woods was sitting on

his bed reading a book.  Defendant Aragon, without provocation, choked Plaintiff Woods by

squeezing his neck.  Defendant Aragon also punched Plaintiff Woods in the face, temple, and

body, and then threw Plaintiff Woods to the cement ground within the cell.  After the incident,

---

[4] It is unclear from the record whether some or all of Defendants Youth Care Specialists were present.  *Lucero* Compl. ¶ 28.

Defendant Aragon shouted at Plaintiff Woods, "This isn't over! I am going to get you!" *Id.* at ¶ 33.

Plaintiff Woods further alleges that following the incident Defendant Aragon was not segregated from the children at YDDC by Defendant Olivas.  Rather, Defendant Aragon had access to the children and, shortly after the incident, attacked another boy in the shower. Plaintiff Woods also contends that Defendant Aragon ordered two boys to attack him.  Finally, Plaintiff Woods states that CYFD hired Defendant Aragon in spite of Defendant Aragon's criminal record of aggravated assault and past gang membership and involvement.

### B.  Procedural History

In January 2014, Plaintiffs filed their individual Complaints in the First Judicial District Court, County of Santa Fe, State of New Mexico.  *See Lucero* Compl.;  *Ramirez* Compl; *Gonzales* Compl.; *Woods* Compl.  On April 28, 2014, Defendants removed this case to federal court.  *See* Notice of Removal (Doc. 1), *Lucero v. Olivas, et al.*, No. 14-CV-00393; Notice of Removal (Doc. 1), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; Notice of Removal (Doc. 1), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; Notice of Removal (Doc. 1), *Woods v. Olivas, et al.*, No. 14-CV-00396.  On January 14, 2015, this Court consolidated the aforementioned cases for purposes of deciding the pending dispositive motions.  (Doc. 36), *Lucero v. Olivas, et al.*, No. 14-CV-00393; (Doc. 15), *Ramirez v. Olivas, et al.*, No. 14-CV-00394; (Doc. 20), *Gonzales v. Olivas, et al.*, No. 14-CV-00395; (Doc. 16), *Woods v. Olivas, et al.*, No. 14-CV-00396.

Plaintiffs bring the consolidated lawsuits against Defendants for alleged violations pursuant to 42 U.S.C. § 1983 and the New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 *et seq.*  In Count I, Plaintiffs state a Section 1983 claim for violation of the Eighth Amendment.  In Count II, Plaintiffs assert a Section 1983 procedural due process claim under the

Fourteenth Amendment.

In Count III, Plaintiffs allege a Section 1983 claim for supervisory liability under the Eighth Amendment.  Count III is specifically asserted against Defendants Silverio Pena, John P. Sweeney (Sweeney), Yolanda Berumen-Deines (Berumen-Deines), in their individual capacities, and CYFD.

In Count IV, Plaintiffs bring a Section 1983 claim for failure to train and supervise under the Eighth and Fourteenth Amendments.  Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD are named in Count IV.

In Count V, Plaintiffs allege state tort claims of assault, battery, false imprisonment, and negligence *per se* pursuant to NMSA 1978, § 30-6-1 D(1)–(2) (Crimes Against Children) and NMSA 1978, §§ 30-6A-1 to 30-6A-4 (Sexual Exploitation of Children).

In Count VI, Plaintiffs assert a state tort claim of "negligent operation or maintenance of a public building" pursuant to NMSA 1978, § 41–4–6, against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Finally, in Count VII, Plaintiffs state a claim of negligence resulting in intentional torts and negligence *per se* against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.

Defendants Olivas, Gilbert, Martinez, David Pena, Dwane Pena, Matthew Stephenson, Silverio Pena, Sweeney, Berumen-Deines, John Doe, and Jane Doe, in their individual capacities, and, CYFD move to dismiss Plaintiffs' NMTCA claims (Count V and Count VII), for failure to state a claim upon which relief can be granted.  Plaintiffs oppose Defendants' Motion to Dismiss NMTCA Claims in its entirety.

Defendant Aragon now moves for a judgment on the pleadings pursuant to Fed. R. Civ.

P. 12(c).  Plaintiffs oppose the motion in its entirety.

### C.  Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Rule 12(c) is designed "to provide a means of disposing of cases when the material facts are not in dispute between the parties."  *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015) (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)).  "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated by Adams v. Jones*, 577 Fed. Appx. 778 (10th Cir. 2014) (quotation omitted).  Accordingly, a court reviewing a motion for judgment on the pleadings must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  *Id.*  Rule 12(c) motions are generally treated like motions to dismiss under Rule 12(b)(6), except that claims dismissed under Rule 12(c) are dismissed with prejudice.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); *Peña*, 110 F. Supp. 3d at 1112.

### D.  Discussion

Defendant Aragon moves for judgment on the pleadings—and dismissal—of Plaintiffs' claims.  Defendant Aragon first contends that he is not a law enforcement officer pursuant to the NMTCA and, therefore, is immune.  Defendant Aragon further asserts that the NMTCA's waiver does not extend to Plaintiffs' negligence *per se* claims.  Defendant Aragon also argues that Plaintiffs' Section 1983 claims and all claims asserted by Plaintiffs Lucero and Ramirez should be dismissed for failure to provide fair notice as to the basis of the claims against him.  In his

reply, Defendant Aragon moves to dismiss Plaintiffs' Woods and Gonzales' Section 1983 Eighth Amendment claims for failure to plead Defendant Aragon's requisite mental state.  Each contention will be discussed in turn.

> a.  *Plaintiffs' NMTCA Claims*

The New Mexico legislature enacted the NMTCA in order to implement an instrument to "compensate those injured by the negligence of public employees and to impose duties of reasonable care," all the while limiting "governmental liability so that government should not have the duty to do everything that might be done."  *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998–NMSC–049 ¶ 6, 970 P.2d 1143, 1145 (internal quotation and citation omitted).  The NMTCA balances these two important public policies "by providing immunity from tort liability for governmental entities and public employees acting within the scope of their duties, except as that immunity is waived, as relevant here, by" NMSA 1978, § 41–4–12.  *Rayos v. State ex rel. N.M. Dep't of Corrs., Adult Prob. & Parole Div.*, 2014–NMCA–103 ¶ 6, 336 P.3d 428, 430.  If no specific waiver can be found in the NMTCA, a plaintiff's complaint against a public employee or a governmental entity must be dismissed.  *See Begay v. State*, 1985–NMCA–117 ¶ 12, 723 P.2d 252, 256.

Section 41–4–12 of the NMTCA "provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort."  *Oliveros v. Mitchell*, 449 F.3d 1091, 1096 (citation omitted).  Section 41–4–12 specifically states:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Therefore, in order to state a claim under Section 41–4–12, a plaintiff must show that a defendant was a law enforcement officer acting within the scope of his/her duty, and that the plaintiff's injuries arose out of either the deprivation of a right secured by law or an enumerated tort in Section 41–4–12. *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996–NMSC–021 ¶ 7, 916 P.2d 1313, 1316.

      *i. Whether Defendant Aragon Qualifies as a Law Enforcement Officer*

  A law enforcement officer is defined as a "full time salaried public employee of a governmental entity . . . whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." NMSA 1978, § 41–4–3(D). The courts construe this definition strictly. *See Montes v. Gallegos*, 812 F. Supp. 1165, 1172 (D.N.M. 1992) (holding mayor not law enforcement officer, notwithstanding his statutory authority and obligation to exercise law enforcement functions); *Dunn v. McFeeley*, 1999–NMCA–084 ¶ 25, 984 P.2d 760, 767 (finding medical investigator and crime laboratory technician not law enforcement officers); *Coyazo v. State*, 1995–NMCA–056 ¶ 18, 897 P.2d 234, 237–38 (concluding district attorney and staff not law enforcement officers); *Dunn v. State ex rel. Tax & Rev. Dep't*, 1993–NMCA–059 ¶ 11, 859 P.2d 469, 472 (holding Director of Motor Vehicle Division, although invested with power to act as "peace officer," "did not serve as a full-time law enforcement officer whose principal duties involved holding in custody persons accused of a criminal offense . . . .") (internal quotation omitted); *Vigil v. Martinez*, 1992–NMCA–033 ¶¶ 17–20, 832 P.2d 405, 411–12 (finding probation and parole officers not law enforcement officers); *Anchondo v. Corr. Dep't*, 1983–NMSC–051 ¶ 14, 666 P.2d 1255, 1258 (concluding Secretary of Corrections and Warden of state penitentiary not law enforcement).

And, particularly relevant to this case, the New Mexico Supreme Court has held that penitentiary correctional officers, notwithstanding their statutory power to make arrests, are not law enforcement officers under the NMTCA. *Callaway v. N.M. Dep't of Corr.*, 1994–NMCA–049 ¶¶ 9–11, 875 P.2d 393, 397. This Court is not aware of any authority in New Mexico that directly addresses whether Defendant Aragon—a former employee of CYFD—was a law enforcement officer at the time of the alleged incidents. The Court, therefore, is tasked with analyzing whether Defendant Aragon's principal duties qualifies him as a "law enforcement officer" under Section 41–4–3(D). *See Callaway*, 1994–NMCA–049, 875 P.2d 393; *Vigil*, 1992–NMCA–033, 832 P.2d 405.

Defendant Aragon contends that his former position at YDDC—a youth facility—is analogous to the principal duties of penitentiary correction officers because YDDC does not hold in custody individuals accused of a criminal offense. Defendant Aragon cites *Callaway v. New Mexico Department of Corrections* and *Lymon v. Aramark Corporation*, 728 F. Supp.2d 1222 (D.N.M. 2010), in support of his contention.

In *Callaway*, the New Mexico Court of Appeals held that state penitentiary correction officers are not law enforcement officers under the NMTCA. 1994–NMCA–049 ¶ 12; 875 P.2d at 397. The Court specifically compared the statutory duties of prison guards, as set forth in NMSA 1978, § 33–2–15, to the statutory definition of law enforcement officers in NMSA 1978, § 41–4–3(D). 1994–NMCA–049 ¶ 10; 875 P.2d at 397. The Court relied on *Vigil*, 1992–NMCA–033, 832 P.2d 405, and *Osborn v. Governor of New Mexico*, an unpublished United States District Court of New Mexico opinion, to reason that prison guards specifically in the Department of Corrections were not law enforcement officers. The *Callaway* Court stated,

> (1) the principal duties of prison guards are to hold in custody persons who have already been convicted rather than merely accused of a criminal offense; (2)

11

> maintenance of public order relates to a public not a penitentiary setting; and (3) although prison guards may have the supplemental power to arrest . . . their principal statutory duties are set forth in Section 33–2–15.

*Id.* at 1994–NMCA–049 ¶ 11; 875 P.2d at 397.

In *Lymon v. Aramark Corporation*, United States District Court Judge James Browning analyzed New Mexico's extensive precedent distinguishing jailers—who were law enforcement officers—from state penitentiary positions that were found not to be law enforcement officers, in particular, correction officers, the Secretary of Corrections, and the Warden. 728 F. Supp. 2d at 1254–55, 1269–70. Judge Browning relied on *Callaway* to decide that the defendant state penitentiary correction officers were immune because their duties did not fall within the statutory definition of law enforcement officers. *Id.* at 1270.

Here, Defendant Aragon has proffered no evidence detailing his principal duties as a Youth Care Specialist at YDDC. Defendant Aragon has not filed an affidavit attesting to his principal duties or cited a statute defining his principal duties. *See Callaway*, 1994–NMCA–049 ¶ 10; 875 P.2d at 397 (analyzing statutory duties of prison guards); *see also Vigil*, 1992–NMCA–033 ¶¶ 14–19, 832 P.2d at 409–12 (comparing affidavit job description with law enforcement officer statutory definition). Nor is it undisputed that Defendant Aragon was a state penitentiary corrections officer at the time of the alleged incidents. *See Lymon*, 728 F. Supp. 2d at 1230 (uncontested defendants were New Mexico Department of Corrections officers at all relevant times). Further, in his reply Defendant Aragon relies upon the New Mexico Delinquency Act, NMSA 1978, § 32A–2–12, for the proposition that only adjudicated children may be held at the YDDC and, thus, Plaintiffs were convicted individuals in the custody of CYFD, not individuals merely accused of a criminal offense. Defendant Aragon fails to discuss his principal duties as a

Youth Care Specialist.[5]  And the Court will not negate clearly established precedent that the proper analysis mandates comparing the statutory definition of a law enforcement officer with the defendant's principal duties.  *See Montes*, 812 F. Supp. at 1172 (D.N.M. 1992); *Dunn*, 1999–NMCA–084 ¶ 25, 984 P.2d at 767; *Coyazo*, 1995–NMCA–056 ¶ 18, 897 P.2d at 237–38; *Callaway*, 1994–NMCA–049 ¶¶ 9–11, 875 P.2d at 397; *Dunn*, 1993–NMCA–059 ¶ 11, 859 P.2d at 472; *Vigil*, 1992–NMCA–033 ¶¶ 17–20, 832 P.2d at 411–12; *Anchondo*, 1983–NMSC–051 ¶ 14, 666 P.2d at 1258.  Accordingly, the Court cannot analyze whether Defendant Aragon qualifies as a law enforcement officer for purposes of waiver of immunity under the NMTCA. Defendant Aragon's Motion for Judgment on the Pleadings with respect to Plaintiffs' NMTCA claims is denied.

> ii.  *Whether the NMTCA Waives Immunity for Negligence Per Se Claims*

In Count V, Plaintiffs allege Defendant Aragon committed negligence *per se,* specifically NMSA 1978, § 30–6–1(D)(1)–(2) (Abuse of a Child), NMSA 1978, § 3—6–4 (Obstruction of Reporting or Investigation of Child Abuse or Neglect), and NMSA 1978, Ch. 30, Art. 6A (Sexual Exploitation of Children).  Defendant Aragon maintains that the NMTCA does not explicitly waive immunity for negligence *per se* claims.  Plaintiffs agree.  In fact, Plaintiffs request that the Court grant them leave to file amended complaints shifting the negligence *per se* claims to Plaintiffs' Section 1983 claim for "cruel and unusual punishment" in Count IV. Plaintiffs' request is perplexing.

First, Count IV pertains to Plaintiffs' Section 1983 claims for failure to train and supervise against Defendants Silverio Pena, Sweeney, Berumen-Deines, in their individual capacities, and CYFD.  Defendant Aragon is not named in Count IV.  The Court can only

---

[5]  In their Complaints, Plaintiffs allege that they were "ordered" into the "care and custody" of the CYFD and transported to the YDDC for "evaluation and rehabilitation."  *Lucero* Compl. ¶ 7; *Ramirez* Compl. ¶ 7; *Gonzales* Compl. ¶ 7; *Woods* Compl. ¶ 7.

surmise that Plaintiffs intended to request to amend Count I, the Section 1983 claim for violation of the Eighth Amendment.

Second, the Court further finds that Plaintiffs' negligence *per se* claims against Defendant Aragon in Count V should be dismissed.  Section 41–4–12 of the NMTCA mandates that a plaintiff's injuries must originate from either the deprivation of a right secured by law or an enumerated tort in Section 41–4–12.  *See Weinstein*, 1996–NMSC–021 ¶ 7, 916 P.2d at 1316. Plaintiffs' negligence *per se* claims—in violation of criminal statutes—do not satisfy either condition.  Plaintiffs, however, state they are "willing to file an amended complaint shifting [the negligence *per se*] allegations to the appropriate count, and will do so with leave of court." (Doc. 46) at 8.  Plaintiffs contend they did not attach a proposed amended complaint as an exhibit to their opposition to the Motion for Judgment on the Pleadings because they did "not know whether the Court will require any other amendment to the complaint."  *Id.*  Plaintiffs' request to file an amended complaint, depending on this Court's ruling, is insufficient to grant leave to amend.  A bare request for leave to amend does not constitute a motion within Fed. R. Civ. P. 15(a).  *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010).  As such, a court may deny or ignore such a request if utilized as a strategic device intended only to increase the time and effort required by this litigation.  This Court, nevertheless, prefers to rule on the merits of Plaintiffs' case than decide this matter on procedural grounds. The Court, thus, will hold the instant motion in abeyance and will impose an expedited schedule for Plaintiffs, if they chose, to file a proper motion for leave to amend.  Plaintiffs may seek leave to amend their Complaints and reallege the negligence *per se* claim under Section 1983 within seven (7) days from the date of this Memorandum Opinion and Order.  If Plaintiffs fail to

properly seek leave—in accordance with federal and local rules—Plaintiffs' negligence *per se* claims will be dismissed with prejudice.

> b. *Whether Plaintiffs' Complaints Sufficiently Provide Notice of Defendant Aragon's Individual Liability*

Defendant Aragon first takes issue with Plaintiffs' Section 1983 claims in Count I for violation of the Eighth Amendment. Defendant Aragon argues that Plaintiffs' Complaints allegations of constitutional violations are inadequate because they fail to provide fair notice as to the basis of the claims against him. Defendant Aragon relies on *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008), to maintain that Plaintiffs' Complaints do not clearly state which Defendant completed, assisted, or was present for each alleged incident. Defendant Aragon also contends that Plaintiffs did not plead the requisite mental state for an Eighth Amendment claim. He also contends that Plaintiff Lucero's and Plaintiff Ramirez's Complaints are devoid of any specific allegations pertaining to Defendant Aragon. Plaintiffs counter that they sufficiently pled factual allegations, including deliberate indifference, against Defendant Aragon to provide notice. Moreover, Plaintiffs are not required to state the allegations in separate counts for each individual defendant.

Defendant Aragon also argues that Plaintiffs' Section 1983 claims, for violation of their Fourteenth Amendment procedural due process rights in Count II, must be dismissed because Plaintiffs allege that the incidents related to those claims occurred after Defendant Aragon was terminated from his position as a Youth Care Specialist. Plaintiffs did not respond to this contention.

"Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case." *Robbins*, 519 F. 3d at 1250 (citation omitted). The Tenth Circuit has specifically stated that in Section 1983 cases, "it is particularly important . . . that the complaint make clear exactly

*who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state. *Id.* (emphasis in original).  "[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against *each* of the defendants."  *Id.* (emphasis added).  Where a complaint uses "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom," the plaintiff's burden to provide fair notice is not met, as the defendants cannot "ascertain what particular unconstitutional acts they are alleged to have committed."  *Id.*

While Plaintiffs' Complaints are not a model of specificity, they are also not completely generic like the complaint at issue in *Robbins*.  In *Robbins*, the plaintiffs' complaint failed to allege the unconstitutional acts of each defendant.  *Id.* at 1250.  Here, Plaintiffs Gonzales' and Woods' Complaints specifically claim that Defendant Aragon participated in allegedly unconstitutional acts.  For instance, Plaintiff Gonzales alleges that Defendant Aragon punched him, threw him to the ground, and threw him into his cell window because Defendant Aragon believed Plaintiff Gonzales was signing.  Then, at a later date, Defendant Aragon approached Plaintiff Gonzales while he was nude in the shower, threatened him, and then shoved him against the wall while pressing his body against Plaintiff Gonzales' genitals.  Plaintiff Woods alleges that Defendant Aragon, without provocation, attacked him.  During the attack, Defendant Aragon choked his neck, repeatedly punched his face and body, and then threw Plaintiff Woods to the ground.  At the end of the incident, Defendant Aragon allegedly threatened Plaintiff Woods that he was "going to get" him.  Indeed, the allegations in Plaintiffs Gonzales' and Woods' Complaints are not controverted by Defendant Aragon and, for purposes of this motion, are

accepted as undisputed.  Based on the foregoing, the Court finds Plaintiffs Gonzales' and Woods' Complaints provide fair notice to Defendant Aragon of the grounds for their claims.

In the context of Plaintiffs Gonzales' and Woods' Section 1983 Eighth Amendment claims for excessive force, the Court finds they sufficiently allege Defendant Aragon wantonly inflicted pain on them by punching, throwing, and inflicting various other physical and mental tortures for no apparent penological purpose.  The Eighth Amendment prohibits the use of excessive force by a prison official.  *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  An inmate alleging excessive force must allege facts that defendant's use of force was objectively unreasonable and that the defendant's intent was for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  One alleging excessive force need not present facts of significant injury if he also presents facts showing that the official "maliciously and sadistically use[d] force to cause harm."  *Id.* at 9.  Of course, "*de minimis* uses of physical force . . . not of a sort repugnant to the conscience of mankind" are not actionable under the Eighth Amendment.  *Id.* at 10 (quotation omitted).  In other words, not "every malevolent touch by a prison guard" will give rise to a federal cause of action, but unnecessary blows causing bruises and swelling, for example, will.  *Id.* at 9.

Taking the allegations above as true and construing them in the light most favorable to Plaintiffs Gonzales and Woods, the Court finds that Plaintiffs Gonzales and Woods have sufficiently demonstrated that objectively, Defendant Aragon unnecessarily used force that was more than *de minimis*, and subjectively, did so maliciously to cause harm.  The Constitution prohibits punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering," and this is the type of punishment that Plaintiffs Gonzales and Woods clearly allege.  *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).  Plaintiffs Gonzales and

Woods, thus, have provided minimum notice to Defendant Aragon of the basis for their claims against him.  Plaintiffs Gonzales and Woods Eighth Amendment excessive force (Count I) claims against Defendant Aragon, therefore, will not be dismissed.

On the other hand, Plaintiffs Gonzales' and Woods' Complaints, fail to allege with any specificity the procedural due process claims attributable to Defendant Aragon.  Nor do Plaintiffs' Complaints provide fair notice as to the grounds for violating Plaintiffs' rights to humane conditions of confinement as all allegations are pled against Defendants collectively. Moreover, Plaintiffs Lucero's and Ramirez's allegations lack specificity regarding Defendant Aragon.  As to Plaintiffs' Fourteenth Amendment claims, Plaintiffs' did not respond to Defendant Aragon's contention that he was not employed at the YDDC during the alleged incident that supports Plaintiffs' claims in Count II.  Accordingly, Plaintiffs have failed to provide fair notice of the grounds for the claims made against Defendant Aragon, and dismissal of Plaintiffs' Eighth Amendment claims for inhumane conditions of confinement (Count I) and Fourteenth Amendment claims (Count II) are warranted on that ground.

The Court finds, however, that Plaintiffs may amend their Complaints to rectify the notice deficiency in their pleadings, specifically relating to the Section 1983 Eighth Amendment claims.  In their response, Plaintiffs contend that Plaintiffs' Complaints generally allege that on a day-to-day basis Defendant Aragon—as a Youth Care Specialist—fostered a "gang minded culture" at the YDDC wherein Plaintiffs were physically or sexually assaulted by staff, denied bathroom access, or had their mail supplies and food stolen by Albuquerque children.  Plaintiffs also state that, if the Court allows at this stage of litigation, Plaintiffs are willing to file an amended complaint specifying Plaintiffs' general allegations against Defendant Aragon.  As discussed above, generally, a bare request for leave to amend in an opposition motion is

insufficient to grant leave.  *See Garman*, 630 F.3d at 986.  The Court prefers prefers, in the interest of justice, to rule on the merits of Plaintiffs' Eighth Amendment claims for inhumane conditions of confinement instead of on procedural grounds.  The Court, thus, will hold the instant motion in abeyance.  Plaintiffs may seek leave to amend their Section 1983 Eighth Amendment claims in Count I within seven (7) days from the filing of this Memorandum Opinion and Order.  If Plaintiffs do so move, the Court will rule on Defendant Aragon's pending Motion for Judgment on the Pleadings based on the original Complaints.

IT IS ORDERED that:

1.  Defendant Eddie Aragon Jr.'s Motion for Judgment on the Pleadings and for Stay of Discovery (Doc. 37) is denied, in part, granted, in part, and held in abeyance, in part;

2.  judgment on the pleadings for Plaintiffs' New Mexico Tort Claims Act in Count V is hereby denied;

3.  judgment on the pleadings will be entered in Defendant Eddie Aragon Jr.'s favor on Count II in Plaintiffs' Complaints (Doc. 1-1) in *Lucero v. Olivas, et al.*, No. 14-CV-00393; *Ramirez v. Olivas, et al.*, No. 14-CV-00394; *Gonzales v. Olivas, et al.*, No. 14-CV-00395; and *Woods v. Olivas, et al.*, No. 14-CV-00396, filed April 28, 2014;

4.  Plaintiffs' Fourteenth Amendment claims against Defendant Aragon in Count II of the Complaints will be dismissed with prejudice;

5.  Plaintiffs have seven (7) days from the date of this Order to move for leave to amend their Complaints with respect to their negligence *per se* claims;

6.  Plaintiffs have seven (7) days from the date of this Order to move for leave to amend their Complaints with respect to their Section 1983 Eighth Amendment claims;

7.  If Plaintiffs do so move, Plaintiffs must attach to their motion a proposed amended

19

complaint and Plaintiffs will bear the burden of establishing that their proposed amendments would not be futile;

    8.  Defendant Eddie Aragon Jr. shall have ten (10) days to respond;

    9.  Plaintiffs shall have three (3) days to reply; and

    10.  If Plaintiffs do not move for leave to amend within seven (7) days of the date of this Order, the Court will dismiss the following with prejudice:  Plaintiffs' negligence *per se* claims in Count V; Plaintiffs Gonzales' and Woods' inhumane conditions of confinement in violation of the Eighth Amendment claims in Count I; and Plaintiffs Lucero's and Ramirez's Section 1983 Eighth Amendment claims in Count I.

UNITED STATES DISTRICT JUDGE

20